(Slip Opinion) OCTOBER TERM, 2008 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BOYLE *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 07–1309.   Argued January 14, 2009—Decided June 8, 2009

The evidence at petitioner Boyle's trial for violating the Racketeer Influenced and Corrupt Organizations Act (RICO) provision forbidding "any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity," 18 U. S. C. §1962(c), was sufficient to prove, among other things, that Boyle and others committed a series of bank thefts in several States; that the participants included a core group, along with others recruited from time to time; and that the core group was loosely and informally organized, lacking a leader, hierarchy, or any long-term master plan. Relying largely on *United States* v. *Turkette*, 452 U. S. 576, 583, the District Court instructed the jury that to establish a RICO association-in-fact "enterprise," the Government must prove (1) an ongoing organization with a framework, formal or informal, for carrying out its objectives, and (2) that association members functioned as a continuing unit to achieve a common purpose.  The court also told the jury that an association-in-fact's existence is often more readily proved by what it does than by abstract analysis of its structure, and denied Boyle's request for an instruction requiring the Government to prove that the enterprise had "an ascertainable structural hierarchy distinct from the charged predicate acts."  Boyle was convicted, and the Second Circuit affirmed.

*Held:*

   1. An association-in-fact enterprise under RICO must have a "structure," but the pertinent jury instruction need not be framed in the precise language Boyle proposes, *i.e.,* as having "an ascertainable structure beyond that inherent in the pattern of racketeering activity

in which it engages." Pp. 4–12.

(a) In light of RICO's broad statement that an enterprise "includes any . . . group of individuals associated in fact although not a legal entity," §1961(4), and the requirement that RICO be "liberally construed to effectuate its remedial purposes," note following §1961, *Turkette* explained that "enterprise" reaches "a group of persons associated together for a common purpose of engaging in a course of conduct," 452 U. S., at 583, and "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Ibid.* Pp. 4–5.

(b) The question presented by this case is whether an association-in-fact enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." Pet. for Cert. i. This question can be broken into three parts. First, the enterprise must have a "structure" that, under RICO's terms, has at least three features: a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose. See *Turkette,* 452 U. S., at 583. The instructions need not actually use the term "structure," however, so long as the relevant point's substance is adequately expressed. Second, because a jury must find the existence of elements of a crime beyond a reasonable doubt, requiring a jury to find the existence of a structure that is *ascertainable* would be redundant and potentially misleading. Third, the phrase "beyond that inherent in the pattern of racketeering activity" is correctly interpreted to mean that the enterprise's existence is a separate element that must be proved, not that such existence may never be inferred from the evidence showing that the associates engaged in a pattern of racketeering activity. See *ibid.* Pp. 6–8.

(c) Boyle's argument that an enterprise must have structural features additional to those that can be fairly inferred from RICO's language—*e.g.,* a hierarchical structure or chain of command; fixed roles for associates; and an enterprise name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies—has no basis in the statute's text. As *Turkette* said, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. The breadth of RICO's "enterprise" concept is highlighted by comparing the statute with other federal laws having much more stringent requirements for targeting organized criminal groups: *E.g.,* §1955(b) defines an "illegal gambling business" as one that "involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." Pp. 8–10.

(d) Rejection of Boyle's argument does not lead to a merger of the

§1962(c) crime and other federal offenses. For example, proof that a defendant violated §1955 does not necessarily establish that he conspired to participate in a gambling enterprise's affairs through a pattern of racketeering activity. Rather, that would require the prosecution to prove either that the defendant committed a pattern of §1955 violations or a pattern of state-law gambling crimes. See §1961(1). Pp. 10–11.

(e) Because RICO's language is clear, the Court need not reach Boyle's statutory purpose, legislative history, or rule-of-lenity arguments. Pp. 11–12.

2. The instructions below were correct and adequate. By explicitly telling jurors they could not convict on the RICO charges unless they found that the Government had proved the existence of an enterprise, the instructions made clear that this was a separate element from the pattern of racketeering activity. The jurors also were adequately told that the enterprise needed the structural attributes that may be inferred from the statutory language. Finally, the instruction that an enterprise's existence "is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure" properly conveyed *Turkette*'s point that proof of a pattern of racketeering activity may be sufficient in a particular case to permit an inference of the enterprise's existence. P. 12.

283 Fed. Appx. 825, affirmed.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined. STEVENS, J., filed a dissenting opinion, in which BREYER, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–1309

EDMUND BOYLE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

[June 8, 2009]

JUSTICE ALITO delivered the opinion of the Court.

We are asked in this case to decide whether an association-in-fact enterprise under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. §1961 *et seq.*, must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." Pet. for Cert. i. We hold that such an enterprise must have a "structure" but that an instruction framed in this precise language is not necessary. The District Court properly instructed the jury in this case. We therefore affirm the judgment of the Court of Appeals.

I

A

The evidence at petitioner's trial was sufficient to prove the following: Petitioner and others participated in a series of bank thefts in New York, New Jersey, Ohio, and Wisconsin during the 1990's. The participants in these crimes included a core group, along with others who were recruited from time to time. Although the participants sometimes attempted bank-vault burglaries and bank robberies, the group usually targeted cash-laden night-

deposit boxes, which are often found in banks in retail areas.

Each theft was typically carried out by a group of participants who met beforehand to plan the crime, gather tools (such as crowbars, fishing gaffs, and walkie-talkies), and assign the roles that each participant would play (such as lookout and driver). The participants generally split the proceeds from the thefts. The group was loosely and informally organized. It does not appear to have had a leader or hierarchy; nor does it appear that the participants ever formulated any long-term master plan or agreement.

From 1991 to 1994, the core group was responsible for more than 30 night-deposit-box thefts. By 1994, petitioner had joined the group, and over the next five years, he participated in numerous attempted night-deposit-box thefts and at least two attempted bank-vault burglaries.

In 2003, petitioner was indicted for participation in the conduct of the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U. S. C. §1962(c); conspiracy to commit that offense, in violation of §1962(d); conspiracy to commit bank burglary, in violation of §371; and nine counts of bank burglary and attempted bank burglary, in violation of §2113(a).

B

In instructing the jury on the meaning of a RICO "enterprise," the District Court relied largely on language in *United States* v. *Turkette*, 452 U. S. 576 (1981). The court told the jurors that, in order to establish the existence of such an enterprise, the Government had to prove that: "(1) There [was] an ongoing organization with some sort of framework, formal or informal, for carrying out its objectives; and (2) the various members and associates of the association function[ed] as a continuing unit to achieve a common purpose." App. 112. Over petitioner's objection,

the court also told the jury that it could "find an enterprise where an association of individuals, without structural hierarchy, form[ed] solely for the purpose of carrying out a pattern of racketeering acts" and that "[c]ommon sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Id.*, at 111–112.[1]

Petitioner requested an instruction that the Government was required to prove that the enterprise "had an ongoing organization, a core membership that functioned as a continuing unit, and an ascertainable structural

_____

[1] The relevant portion of the instructions was as follows:

"The term 'enterprise' as used in these instructions may also include a group of people associated in fact, even though this association is not recognized as a legal entity. Indeed, an enterprise need not have a name. Thus, an enterprise need not be a form[al] business entity such as a corporation, but may be merely an informal association of individuals. A group or association of people can be an 'enterprise' if, among other requirements, these individuals 'associate' together for a purpose of engaging in a course of conduct. Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure.

"Moreover, you may find an enterprise where an association of individuals, *without structural hierarchy*, forms solely for the purpose of carrying out a pattern of racketeering acts. Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and . . . by evidence that the people making up the association functioned as a continuing unit. Therefore, in order to establish the existence of such an enterprise, the government must prove that: (1) There is an ongoing organization with some sort of framework, formal or informal, for carrying out its objectives; and (2) the various members and associates of the association function as a continuing unit to achieve a common purpose.

"Regarding 'organization,' *it is not necessary that the enterprise have any particular or formal structure*, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise." App. 111–113 (emphasis added).

hierarchy distinct from the charged predicate acts." *Id.*, at 95. The District Court refused to give that instruction.

Petitioner was convicted on 11 of the 12 counts against him, including the RICO counts, and was sentenced to 151 months' imprisonment. In a summary order, the Court of Appeals for the Second Circuit affirmed his conviction but vacated the sentence on a ground not relevant to the issues before us. 283 Fed. Appx. 825 (2007). The Court of Appeals did not specifically address the RICO jury instructions, stating only that the arguments not discussed in the order were "without merit." *Id.*, at 826. Petitioner was then resentenced, and we granted certiorari, 554 U. S. ___ (2008), to resolve conflicts among the Courts of Appeals concerning the meaning of a RICO enterprise.

## II
## A

RICO makes it "unlawful for any person employed by or *associated with any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U. S. C. §1962(c) (emphasis added).

The statute does not specifically define the outer boundaries of the "enterprise" concept but states that the term "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." §1961(4).[2] This enumeration of included enterprises

_____

[2] This provision does not purport to set out an exhaustive definition of the term "enterprise." Compare §§1961(1)–(2) (defining what the terms "racketeering activity" and "State" *mean*) with §§1961(3)–(4) (defining what the terms "person" and "enterprise" *include*). Accordingly, this provision does not foreclose the possibility that the term might include, in addition to the specifically enumerated entities, others that fall

is obviously broad, encompassing "*any* . . . group of individuals associated in fact." *Ibid.* (emphasis added). The term "any" ensures that the definition has a wide reach, see, *e.g.*, *Ali* v. *Federal Bureau of Prisons*, 552 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 4–5), and the very concept of an association in fact is expansive. In addition, the RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." §904(a), 84 Stat. 947, note following 18 U. S. C. §1961; see also, *e.g.*, *National Organization for Women, Inc.* v. *Scheidler*, 510 U. S. 249, 257 (1994) ("RICO broadly defines 'enterprise'"); *Sedima, S. P. R. L.* v. *Imrex Co.*, 473 U. S. 479, 497 (1985) ("RICO is to be read broadly"); *Russello* v. *United States*, 464 U. S. 16, 21 (1983) (noting "the pattern of the RICO statute in utilizing terms and concepts of breadth").

In light of these statutory features, we explained in *Turkette* that "an enterprise includes any union or group of individuals associated in fact" and that RICO reaches "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U. S., at 580, 583. Such an enterprise, we said, "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.*, at 583.

Notwithstanding these precedents, the dissent asserts that the definition of a RICO enterprise is limited to "business-like entities." See *post*, at 1–5 (opinion of STEVENS, J.). We see no basis to impose such an extratextual requirement.[3]

————————

within the ordinary meaning of the term "enterprise." See *H. J. Inc.* v. *Northwestern Bell Telephone Co.*, 492 U. S. 229, 238 (1989) (explaining that the term "pattern" also retains its ordinary meaning notwithstanding the statutory definition in §1961(5)).

[3] The dissent claims that the "business-like" limitation "is confirmed by the text of §1962(c) and our decision in *Reves* v. *Ernst & Young*, 507 U. S. 170 (1993)." *Post*, at 3. Section 1962(c), however, states only that

B

As noted, the specific question on which we granted certiorari is whether an association-in-fact enterprise must have "an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." Pet. for Cert. i. We will break this question into three parts. First, must an association-in-fact enterprise have a "structure"? Second, must the structure be "ascertainable"? Third, must the "structure" go "beyond that inherent in the pattern of racketeering activity" in which its members engage?

*"Structure."* We agree with petitioner that an association-in-fact enterprise must have a structure. In the sense relevant here, the term "structure" means "[t]he way in which parts are arranged or put together to form a whole" and "[t]he interrelation or arrangement of parts in a complex entity." American Heritage Dictionary 1718 (4th ed. 2000); see also Random House Dictionary of the English Language 1410 (1967) (defining structure to mean, among other things, "the pattern of relationships, as of status or friendship, existing among the members of a group or society").

From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit

―――――――――

one may not "conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." Whatever business-like characteristics the dissent has in mind, we do not see them in §1962(c). Furthermore, *Reves* v. *Ernst & Young*, 507 U. S. 170 (1993), is inapposite because that case turned on our interpretation of the participation requirement of §1962, not the definition of "enterprise." See *id.*, at 184–185. In any case, it would be an interpretive stretch to deduce from the requirement that an enterprise must be "directed" to impose the much broader, amorphous requirement that it be "business-like."

these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette*, an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U. S., at 583.

That an "enterprise" must have a purpose is apparent from meaning of the term in ordinary usage, *i.e.*, a "venture," "undertaking," or "project." Webster's Third New International Dictionary 757 (1976). The concept of "associat[ion]" requires both interpersonal relationships and a common interest. See *id.*, at 132 (defining "association" as "an organization of persons having a common interest"); Black's Law Dictionary 156 (rev. 4th ed. 1968) (defining "association" as a "collection of persons who have joined together for a certain object"). Section 1962(c) reinforces this conclusion and also shows that an "enterprise" must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had "affairs" of sufficient duration to permit an associate to "participate" in those affairs through "a pattern of racketeering activity."

Although an association-in-fact enterprise must have these structural features, it does not follow that a district court must use the term "structure" in its jury instructions. A trial judge has considerable discretion in choosing the language of an instruction so long as the substance of the relevant point is adequately expressed.

*"Ascertainable."* Whenever a jury is told that it must find the existence of an element beyond a reasonable doubt, that element must be "ascertainable" or else the jury could not find that it was proved. Therefore, telling the members of the jury that they had to ascertain the existence of an "ascertainable structure" would have been redundant and potentially misleading.

*"Beyond that inherent in the pattern of racketeering activity."* This phrase may be interpreted in least two

different ways, and its correctness depends on the particular sense in which the phrase is used. If the phrase is interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct. As we explained in *Turkette*, the existence of an enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other."[4] 452 U. S., at 583.

On the other hand, if the phrase is used to mean that the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity, it is incorrect. We recognized in *Turkette* that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise "may in particular cases coalesce." *Ibid.*

C

The crux of petitioner's argument is that a RICO enterprise must have structural features in addition to those that we think can be fairly inferred from the language of the statute. Although petitioner concedes that an association-in-fact enterprise may be an "'informal'" group and that "not 'much'" structure is needed, Reply Brief for Petitioner 24, he contends that such an enterprise must have at least some additional structural attributes, such as a structural "hierarchy," "role differentiation," a "unique *modus operandi*," a "chain of command," "professionalism and sophistication of organization," "diversity

_____

[4] It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise. For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise.

and complexity of crimes," "membership dues, rules and regulations," "uncharged or additional crimes aside from predicate acts," an "internal discipline mechanism," "regular meetings regarding enterprise affairs," an "enterprise 'name,'" and "induction or initiation ceremonies and rituals." *Id.*, at 31–35; see also Brief for Petitioner 26–28, 33; Tr. of Oral Arg. 6, 8, 17.

We see no basis in the language of RICO for the structural requirements that petitioner asks us to recognize. As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose. Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

The breadth of the "enterprise" concept in RICO is highlighted by comparing the statute with other federal statutes that target organized criminal groups. For example, 18 U. S. C. §1955(b), which was enacted together with RICO as part of the Organized Crime Control Act of 1970, 84 Stat. 922, defines an "illegal gambling business" as one that "involves five or more persons who conduct, finance,

manage, supervise, direct, or own all or part of such business." A "continuing criminal enterprise," as defined in 21 U. S. C. §848(c), must involve more than five persons who act in concert and must have an "organizer," supervisor, or other manager. Congress included no such requirements in RICO.

## III
### A

Contrary to petitioner's claims, rejection of his argument regarding these structural characteristics does not lead to a merger of the crime proscribed by 18 U. S. C. §1962(c) (participating in the affairs of an enterprise through a pattern of racketeering activity) and any of the following offenses: operating a gambling business, §1955; conspiring to commit one or more crimes that are listed as RICO predicate offenses, §371; or conspiring to violate the RICO statute, §1962(d).

Proof that a defendant violated §1955 does not necessarily establish that the defendant conspired to participate in the affairs of a gambling enterprise through a pattern of racketeering activity. In order to prove the latter offense, the prosecution must prove either that the defendant committed a pattern of §1955 violations or a pattern of state-law gambling crimes. See §1961(1). No such proof is needed to establish a simple violation of §1955.

Likewise, proof that a defendant conspired to commit a RICO predicate offense—for example, arson—does not necessarily establish that the defendant participated in the affairs of an arson enterprise through a pattern of arson crimes. Under §371, a conspiracy is an inchoate crime that may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy. See *United States* v. *Feola*, 420 U. S. 671, 694 (1975). Section 1962(c) demands much more: the creation of an "enter-

prise"—a group with a common purpose and course of conduct—and the actual commission of a pattern of predicate offenses.[5]

Finally, while in practice the elements of a violation of §§1962(c) and (d) are similar, this overlap would persist even if petitioner's conception of an association-in-fact enterprise were accepted.

## B

Because the statutory language is clear, there is no need to reach petitioner's remaining arguments based on statutory purpose, legislative history, or the rule of lenity. In prior cases, we have rejected similar arguments in favor of the clear but expansive text of the statute. See *National Organization for Women*, 510 U. S., at 262 ("The fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth" (quoting *Sedima*, 473 U. S., at 499, brackets and internal quotation marks omitted)); see also *Turkette*, 452 U. S., at 589–591. "We have repeatedly refused to adopt narrowing constructions of RICO in order to make it conform to a preconceived notion of what Congress intended to proscribe." *Bridge* v. *Phoenix Bond & Indemnity Co.*, 553 U. S. \_\_\_, \_\_\_ (2008) (slip op., at 20); see also, *e.g.*, *National Organization for Women*, *supra*, at 252 (rejecting the argument that "RICO requires proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose"); *H. J. Inc. v. Northwestern Bell Telephone Co.*, 492 U. S. 229, 244 (1989) (declining to read "an organized

---

[5] The dissent states that "[o]nly if proof of the enterprise element . . . requires evidence of activity or organization beyond that inherent in the pattern of predicate acts will RICO offenses retain an identity distinct from §371 offenses." *Post*, at 7 (opinion of STEVENS, J.). This is incorrect: Even if the same evidence may prove two separate elements, this does not mean that the two elements collapse into one.

crime limitation into RICO's pattern concept"); *Sedima*, *supra*, at 481 (rejecting the view that RICO provides a private right of action "only against defendants who had been convicted on criminal charges, and only where there had occurred a 'racketeering injury'").

## IV

The instructions the District Court judge gave to the jury in this case were correct and adequate. These instructions explicitly told the jurors that they could not convict on the RICO charges unless they found that the Government had proved the existence of an enterprise. See App. 111. The instructions made clear that this was a separate element from the pattern of racketeering activity. *Ibid.*

The instructions also adequately told the jury that the enterprise needed to have the structural attributes that may be inferred from the statutory language. As noted, the trial judge told the jury that the Government was required to prove that there was "an ongoing organization with some sort of framework, formal or informal, for carrying out its objectives" and that "the various members and associates of the association function[ed] as a continuing unit to achieve a common purpose." *Id.*, at 112.

Finally, the trial judge did not err in instructing the jury that "the existence of an association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." *Id.*, at 111–112. This instruction properly conveyed the point we made in *Turkette* that proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise.

We therefore affirm the judgment of the Court of Appeals.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

———————

No. 07–1309

———————

## EDMUND BOYLE, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 8, 2009]

JUSTICE STEVENS, with whom JUSTICE BREYER joins,
dissenting.

In my view, Congress intended the term "enterprise" as
it is used in the Racketeer Influenced and Corrupt Or-
ganizations Act (RICO), 18 U. S. C. §1961 *et seq.*, to refer
only to business-like entities that have an existence apart
from the predicate acts committed by their employees or
associates. The trial judge in this case committed two
significant errors relating to the meaning of that term.
First, he instructed the jury that "an association of indi-
viduals, without structural hierarchy, form[ed] solely for
the purpose of carrying out a pattern of racketeering acts"
can constitute an enterprise. App. 112. And he allowed
the jury to find that element satisfied by evidence showing
a group of criminals with no existence beyond its intermit-
tent commission of racketeering acts and related offenses.
Because the Court's decision affirming petitioner's convic-
tion is inconsistent with the statutory meaning of the term
enterprise and serves to expand RICO liability far beyond
the bounds Congress intended, I respectfully dissent.

## I

RICO makes it "unlawful for any person employed by or
associated with any enterprise engaged in, or the activities
of which affect, interstate or foreign commerce, to conduct

or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." §1962(c).  The statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." §1961(4).

It is clear from the statute and our earlier decisions construing the term that Congress used "enterprise" in these provisions in the sense of "a business organization," Webster's Third New International Dictionary 757 (1976), rather than "a 'venture,' 'undertaking,' or 'project,'" *ante*, at 6 (quoting Webster's Third New International Dictionary, at 757).  First, the terms "individual, partnership, corporation, association, or other legal entity" describe entities with formal legal structures most commonly established for business purposes.  §1961(4).  In context, the subsequent reference to any "union or group of individuals associated in fact *although not a legal entity*" reflects an intended commonality between the legal and nonlegal entities included in the provision.  *Ibid.* (emphasis added). "The juxtaposition of the two phrases suggests that 'associated in fact' just means structured without the aid of legally defined structural forms such as the business corporation." *Limestone Development Corp.* v. *Lemont*, 520 F. 3d 797, 804–805 (CA7 2008).[1]

_____

[1] To be sure, we have read RICO's enterprise term broadly to include entities with exclusively noneconomic motives or wholly unlawful purposes.  See *National Organization for Women, Inc.* v. *Scheidler*, 510 U. S. 249, 252 (1994) *(NOW); United States* v. *Turkette*, 452 U. S. 576, 580–581 (1981).  But those holdings are consistent with the conclusion that an enterprise is a business-like entity.  Indeed, the examples of qualifying associations cited in *Turkette*—including loan-sharking, property-fencing, drug-trafficking, and counterfeiting operations— satisfy that criterion, as each describes an organization with continuing operations directed toward providing goods or services to its customers. See *id.*, at 589–590 (citing 84 Stat. 923; 116 Cong. Rec. 592 (1970)).

That an enterprise must have business-like characteristics is confirmed by the text of §1962(c) and our decision in *Reves* v. *Ernst & Young*, 507 U. S. 170 (1993). Section 1962(c) creates liability for "conduct[ing] or participat[ing] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." In *Reves,* we examined that provision's meaning and held that, "[i]n order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Id.*, at 179 (quoting §1962(c)). It is not enough for a defendant to "carry on" or "participate in" an enterprise's affairs through a pattern of racketeering activity; instead, evidence that he operated, managed, or directed those affairs is required. See *id.*, at 177–179. This requirement confirms that the enterprise element demands evidence of a certain quantum of business-like organization—*i.e.*, a system of processes, dealings, or other affairs that can be "directed."

Our cases also make clear that an enterprise "is an entity separate and apart from the pattern of activity in which it engages." *United States* v. *Turkette*, 452 U. S. 576, 583 (1981). As with the requirement that an enterprise have business-like characteristics, that an enterprise must have a separate existence is confirmed by §1962(c) and *Reves*. If an entity's existence consisted solely of its members' performance of a pattern of racketeering acts, the "enterprise's affairs" would be synonymous with the "pattern of racketeering activity." Section 1962(c) would then prohibit an individual from conducting or participating in "the conduct of [a pattern of racketeering activity] through a pattern of racketeering activity"—a reading

———————

Similarly, the enterprise at issue in *NOW* was a nationwide network of antiabortion groups that had a leadership counsel and regular conferences and whose members undertook an extensive pattern of extortion, arson, and other racketeering activity for the purpose of "shut[ting] down abortion clinics." 510 U. S., at 253.

that is unbearably redundant, particularly in a case like this one in which a single pattern of activity is alleged. The only way to avoid that result is to require that an "enterprise's affairs" be something other than the pattern of racketeering activity undertaken by its members.[2]

Recognizing an enterprise's business-like nature and its distinctness from the pattern of predicate acts, however, does not answer the question of what proof each element requires. In cases involving a legal entity, the matter of proving the enterprise element is straightforward, as the entity's legal existence will always be something apart from the pattern of activity performed by the defendant or his associates. Cf. *Cedric Kushner Promotions, Ltd.* v. *King*, 533 U. S. 158, 163 (2001). But in the case of an association-in-fact enterprise, the Government must adduce other evidence of the entity's "separate" existence and "ongoing organization." *Turkette*, 452 U. S., at 583. There may be cases in which a jury can infer that existence and continuity from the evidence used to establish the pattern of racketeering activity. *Ibid.* But that will be

_____

[2] The other subsections of 18 U. S. C. §1962 further demonstrate the business-like nature of the enterprise element and its necessary distinctness from the pattern of racketeering activity. Subsection (a) prohibits anyone who receives income derived from a pattern of racketeering activity from "us[ing] or invest[ing], directly or indirectly, any part of such income . . . in acquisition of any interest in, or the establishment or operation of, any enterprise." And subsection (b) prohibits anyone from "acquir[ing] or maintain[ing]" any interest in or control of an enterprise through a pattern of racketeering activity. We noted in *NOW* that the term enterprise "plays a different role in the structure" of those subsections than it does in subsection (c) because the enterprise in those subsections is the victim. 510 U. S., at 258–259. We did not, however, suggest that the term has a substantially different meaning in each subsection. To the contrary, our observation that the enterprise in subsection (c) is "the vehicle through which the unlawful pattern of racketeering activity is committed," *id.*, at 259, indicates that, as in subsections (a) and (b), the enterprise must have an existence apart from the pattern of racketeering activity.

true only when the pattern of activity is so complex that it could not be performed in the absence of structures or processes for planning or concealing the illegal conduct beyond those inherent in performing the predicate acts. More often, proof of an enterprise's separate existence will require different evidence from that used to establish the pattern of predicate acts.

Precisely what proof is required in each case is a more difficult question, largely due to the abundant variety of RICO predicates and enterprises. Because covered enterprises are necessarily business-like in nature, however, proof of an association-in-fact enterprise's separate existence will generally require evidence of rules, routines, or processes through which the entity maintains its continuing operations and seeks to conceal its illegal acts. As petitioner suggests, this requirement will usually be satisfied by evidence that the association has an "ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages." Pet. for Cert. i. Examples of such structure include an organizational hierarchy, a "framework for making decisions," an "internal discipline mechanism," "regular meetings," or a practice of "reinvest[ing] proceeds to promote and expand the enterprise." Reply Brief for Petitioner 31–34. In other cases, the enterprise's existence might be established through evidence that it provides goods or services to third parties, as such an undertaking will require organizational elements more comprehensive than those necessary to perform a pattern of predicate acts. Thus, the evidence needed to establish an enterprise will vary from case to case, but in every case the Government must carry its burden of proving that an alleged enterprise has an existence separate from the pattern of racketeering activity undertaken by its constituents.

II

In some respects, my reading of the statute is not very different from that adopted by the Court. We agree that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Ante*, at 6. But the Court stops short of giving content to that requirement. It states only that RICO "demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity,'" before concluding that "[a] trial judge has considerable discretion in choosing the language of an instruction" and need not use the term "structure." *Ante*, at 7. While I agree the word structure is not talismanic, I would hold that the instructions must convey the requirement that the alleged enterprise have an existence apart from the alleged pattern of predicate acts. The Court's decision, by contrast, will allow juries to infer the existence of an enterprise in every case involving a pattern of racketeering activity undertaken by two or more associates.

By permitting the Government to prove both elements with the same evidence, the Court renders the enterprise requirement essentially meaningless in association-in-fact cases. It also threatens to make that category of §1962(c) offenses indistinguishable from conspiracies to commit predicate acts, see §371, as the only remaining difference is §1962(c)'s pattern requirement. The Court resists this criticism, arguing that §1962(c) "demands much more" than the inchoate offense defined in §371. *Ante*, at 10. It states that the latter "may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy," whereas the former requires the creation of "a group with a common purpose and course of conduct—and the

actual commission of a pattern of predicate offenses." *Ibid.* Given that it is also unlawful to conspire to violate §1962(c), see §1962(d), this comment provides no assurance that RICO and §371 offenses remain distinct. Only if proof of the enterprise element—the "group with a common purpose and course of conduct"—requires evidence of activity or organization beyond that inherent in the pattern of predicate acts will RICO offenses retain an identity distinct from §371 offenses.

This case illustrates these concerns. The trial judge instructed the jury that an enterprise need have only the degree of organization necessary "for carrying out its objectives" and that it could "find an enterprise where an association of individuals, without structural hierarchy, forms solely for the purpose of carrying out a pattern of racketeering acts." App. 112.[3] These instructions were plainly deficient, as they did not require the Government to prove that the alleged enterprise had an existence apart from the pattern of predicate acts. Instead, they permitted the Government's proof of the enterprise's structure and continuing nature—requirements on which all agree—to consist only of evidence that petitioner and his associates performed a pattern of racketeering activity.

Petitioner's requested instruction would have required the jury to find that the alleged enterprise "had an ongoing organization, a core membership that functioned as a continuing unit, and an ascertainable structural hierarchy distinct from the charged predicate acts." *Id.*, at 95. That instruction does not precisely track my understanding of the statute; although evidence of "structural hierarchy" can evidence an enterprise, it is not necessary to establish that element. Nevertheless, the proposed instruction would have better directed the jury to consider whether

—————

[3] For the full text of the relevant portion of the instructions, see *ante*, at 3, n. 1.

the alleged enterprise possessed the separate existence necessary to expose petitioner to liability under §1962(c), and the trial judge should have considered an instruction along those lines.

The trial judge also erred in finding the Government's evidence in this case sufficient to support petitioner's RICO convictions. Petitioner was alleged to have participated and conspired to participate in the conduct of an enterprise's affairs through a pattern of racketeering activity consisting of one act of bank robbery and three acts of interstate transportation of stolen funds. *Id.*, at 15–19. The "primary goals" of the alleged enterprise "included generating money for its members and associates through the commission of criminal activity, including bank robberies, bank burglaries and interstate transportation of stolen money." *Id.*, at 14. And its *modus operandi* was to congregate periodically when an associate had a lead on a night-deposit box that the group could break into. Whoever among the associates was available would bring screwdrivers, crowbars, and walkie-talkies to the location. Some acted as lookouts, while others retrieved the money. When the endeavor was successful, the participants would split the proceeds. Thus, the group's purpose and activities, and petitioner's participation therein, were limited to sporadic acts of taking money from bank deposit boxes. There is no evidence in RICO's text or history that Congress intended it to reach such ad hoc associations of thieves.

## III

Because the instructions and evidence in this case did not satisfy the requirement that an alleged enterprise have an existence separate and apart from the pattern of activity in which it engages, I respectfully dissent.