# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2610
_____

Steven Nelson

*Plaintiff - Appellant*

v.

James Nelson; Chris Feller; Randy Skjerven; AgCountry Farm Credit Services, ACA

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: May 17, 2016
Filed: August 18, 2016
_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.
_____

RILEY, Chief Judge.

Steven Nelson claims his brother, James, with the connivance of an accountant and a banker, siphoned money from the brothers' farming business. Steven sued the three of them, along with the accountant and banker's employer, for violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68.

We affirm the district court's[1] dismissal of his case. See 28 U.S.C. § 1291 (appellate jurisdiction).

## I.    BACKGROUND

According to Steven, whose factual allegations we take as true at this stage, see, e.g., Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 350 n.3 (8th Cir. 2011), he and James farmed grain and sugar beets as equal partners in J&S Nelson Farms, LLP (J&S or the partnership). James was in charge of the finances. James hired AgCountry Farm Credit Services, ACA, (AgCountry) to help with accounting and taxes. Chris Feller, an accountant at AgCountry, handled J&S's bookkeeping. Feller also prepared tax returns for the partnership and the Nelson brothers personally. Other than going over the books with Feller once a year, Steven took no part in managing or monitoring the partnership's money, instead trusting James to do so.

James, Steven says, has been abusing that trust and embezzling money for himself, his sons, and his other businesses ever since J&S was formed in 1998. James allegedly routinely withdrew cash or made payments with company money and then, with Feller's help, disguised the disbursements as business expenses or falsely attributed them to Steven. To accomplish the transfers, James colluded with another AgCountry employee, banker Randy Skjerven, who wired money wherever James directed. Skjerven also arranged for J&S to take out loans on false pretenses, at "very high" interest rates, so James could then take the money to buy property for himself.

When Steven eventually realized what was happening behind his back, he sued James, Feller, Skjerven, and AgCountry under 18 U.S.C. § 1964(c), which lets "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter" recover treble damages and litigation costs. To establish violations of

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

§ 1962, Steven listed hundreds of instances in which he says James took money from the partnership for his personal use. Steven's theory was that because many of those transactions involved checks or electronic transfers, they constituted mail and wire fraud. Also, James and Feller's submission of tax returns that mischaracterized or hid James's withdrawals were mail or wire fraud, because they were filed electronically. And, according to Steven, James and Feller were also guilty of evading taxes, James and Skjerven of committing bank fraud and forging Steven's signature on loan applications, and James of laundering money.[2]

On the defendants' motions, see Fed. R. Civ. P. 12(b)(6), the district court dismissed Steven's complaint for failing to state a claim on which relief can be granted. Steven appeals.

## II.  DISCUSSION

The statutory right of action under which Steven sued is based on "violation[s] of section 1962 of this chapter." 18 U.S.C. § 1964(c). That section contains RICO's four substantive prohibitions. See id. § 1962(a)-(d). Steven's focus is § 1962(c), which makes it illegal "for any person . . . associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."[3]

---

[2]Steven did not allege AgCountry itself did anything illegal, just that it is "liable . . . through the doctrine of respondeat superior." We need not decide whether an employer can face vicarious RICO liability for the acts of its employees, cf. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 166 (2001) (reserving this question), because AgCountry does not contest the point and Steven's claims fail for other reasons.

[3]In his complaint, Steven also conclusorily alleged related violations of § 1962(a) and (d), which prohibit investing money derived from a pattern of racketeering activity in an enterprise and conspiring to violate RICO, respectively.

The district court based its dismissal on a determination that Steven failed to establish the necessary "pattern of racketeering activity," both because the misconduct he alleged did not count as "racketeering activity," see id. § 1961(1) (listing dozens of crimes and other offenses under federal and state law, at various levels of specificity), and because it did not make out a "pattern." Although we reach the same result, we focus instead on another key element of the alleged RICO violation, namely the existence of an "enterprise" whose affairs were supposedly conducted in such an illicit manner. Because whether Steven pled enough facts "to 'state a claim to relief that is plausible on its face'" is a question of law, our analysis of this issue is de novo. Crest Constr., 660 F.3d at 352-53 (quoting Walker v. Barrett, 650 F.3d 1198, 1203 (8th Cir. 2011)).

An enterprise, for RICO purposes, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Steven pled the last kind, a so-called "association-in-fact," comprising James, J&S, Feller, Skjerven, AgCountry's entire corporate group, including its subsidiaries and affiliates, James's sons, and an ill-defined cluster of other business entities James allegedly used to facilitate taking money out of J&S. To count as a RICO enterprise, such an informal association must be "a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009); see also United States v. Turkette, 452 U.S. 576, 583 (1981) ("The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. . . . [It] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."). In other words, while an association-in-fact need not have any particular indicia of organization, such as "a hierarchical structure," "a 'chain of command,'" "a name,

He does not raise any arguments regarding either on appeal, so we do not address them.

regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies," it does need some sort of discrete existence and structure uniting its members in a cognizable group. Boyle, 556 U.S. at 948; see also Turkette, 452 U.S. at 583 ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.").

Steven argues the alleged enterprise constituted such a "continuing unit," Boyle, 556 U.S. at 948, on the theory that the same individuals and entities that make up the enterprise also run the Nelsons' legitimate farming business. But the facts Steven alleged about the members of the supposed enterprise doing various things other than racketeering are unhelpful here because none of those things were done by, or attributable to, the group as a whole. Rather, Steven's allegations show different subsets of the group pursuing their own ends separately—operating farming businesses, for example, or providing financial services for hire. They therefore do nothing to support Steven's assertion that the group he described functioned together as a coherent unit. See Crest Constr., 660 F.3d at 355 ("[W]hile 'each member of th[e] group carried on other legitimate activities, these activities were not in furtherance of the common or shared purpose of the enterprise and, thus, were not acts of the enterprise.'" (second alteration in original) (quoting Stephens, Inc. v. Geldermann, Inc., 962 F.2d 808, 816 (8th Cir. 1992))); cf. Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986, 996 (8th Cir. 1989) (concluding an enterprise involving otherwise legitimate businesses "had an on-going structure" because, even "[p]utting the predicate acts of mail fraud aside," the enterprise "sold real estate, loaned money to develop properties, performed subcontracting work, and built single-family residences").

Steven's other allegations also fall short of establishing that the numerous individuals and entities listed in his complaint formed a "continuing unit." See Boyle, 556 U.S. at 948. Leaving aside Steven's conclusory references to a joint

operation to defraud him, there is no indication Feller and Skjerven, for example, had anything to do with each other or James's other partnerships and businesses, or that AgCountry itself shared any common structure or understanding with the other members of the supposed enterprise. The facts alleged in the complaint simply show Feller and Skjerven following James's directions and performing various discrete tasks within their fields of expertise, as they were hired to do. Absent any other "'common factor' . . . 'defin[ing] them as a distinct group,'" the fact that they allegedly played roles in James's overarching scheme and thus "'participat[ed]' in the . . . scheme to defraud" while working for AgCountry does not automatically turn their disjointed activities into a group effort. Crest Constr., 660 F.3d at 355 (quoting Stephens, 962 F.2d at 815); see also United States v. Henley, 766 F.3d 893, 906 (8th Cir. 2014) (explaining a RICO enterprise requires "a formal or informal organization of the participants in which they function as a unit"). Nor is this a case where "the existence of an enterprise"—or at least the particular enterprise Steven described in his complaint—"may . . . be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity," Boyle, 556 U.S. at 947, because the sorts of activities he alleged do not require or suggest the joint involvement of such a group.

## III.  CONCLUSION

Steven's failure to plead the existence of an enterprise sufficiently is fatal to his allegations of RICO violations and thus to his case under 18 U.S.C. § 1964(c). We therefore affirm the judgment of the district court.

_____