DIAZ, Circuit Judge,
dissenting as to Parts II.A. and IV.
The majority finds that the evidence was insufficient to prove the existence of a single conspiracy involving a RICO enterprise, or to prove a pattern of racketeering activity. Given the deferential posture under which we review jury verdicts, I respectfully disagree.
To obtain a conviction for RICO, conspiracy under § 1962(d), the government must first prove that a RICO “enterprise” exists. Second, it must show that the defendant conspired to participate in the enterprise’s affairs and that the defendant agreed that he or someone else in the enterprise would commit at least two racketeering (or “predicate”) acts.[1] United States v. Mouzone, 687 F.3d 207, 218 (4th Cir. 2012). Finally, the government must prove a “pattern” of racketeering activity by linking the two predicate acts to continuous criminal activity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 238-39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The majority finds the government failed to prove the first and third elements. I address those elements in turn.
*173 A RICO enterprise exists when a group of persons “associate[ ] together for a common purpose of engaging in a course of conduct.” United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). To prove an enterprise’s existence, the government must demonstrate “that the various associates function as a continuing unit” and must offer “evidence of an ongoing organization.” Id. This organization however can either be a “formal” legal entity or, as is the case here, an “informal” group. Id. In Boyle v. United States, the Supreme Court held that an informal or “association-in-fact” RICO enterprise “must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise’s purpose.” 556 U.S. 938, 946,129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009). A jury could have reasonably inferred these three structural features based on the government’s case against Pinson.
At trial, the government’s evidence showed that the purpose of Pinson’s enterprise was to enrich its members through kickbacks and embezzlement of grant money. Mims, Givens, Zahn, and Williams testified that the group used numerous business ventures to commit financial fraud, including Supremes (the diaper business), VRE (the real estate project), SCSU’s homecoming concert, and SCSU’s acquisition of an off-campus retreat. Many of Pinson’s associates participated in more than one venture; the real estate and diaper schemes, for example, involved almost the exact same individuals. There were also connections between the grant-related frauds and the SCSU-related kickbacks. Williams testified that Brixstone, which took an active role in the diaper business venture, also was “supposed to be used for moving money” discretely from schemes involving SCSU, where Pinson and Wright served on the Board of Trustees. J.A. 923. And Givens testified that he and others planned to use their connections at the University to generate business opportunities for Mims—who was involved in the diaper business and real estate project— with the expectation “[t]hat there would be some type of sharing of the profit.” J.A. 368-69. Given this evidence, a reasonable jury could have found that the government met its burden on the “purpose” element.
As the majority notes, the purpose of this particular RICO enterprise overlaps with that of the enterprise’s underlying acts: to enrich Pinson and his associates. But the Supreme Court has reminded us that “the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise may in particular cases coalesce.” Boyle, 556 U.S. at 947, 129 S.Ct. 2237 (internal quotation marks omitted). The enterprise in Boyle, for example, comprised of a changing group of robbers who sought to enrich themselves by committing repeated bank burglaries and robberies. Id. at 941, 129 S.Ct. 2237. The Court recognized that “the existence of an association-in-fact [enterprise] is oftentimes more readily proven by what [it] does, rather than by abstract analysis of its structure.” Id. at 951, 129 S.Ct. 2237 (quoting jury instructions used by the district court). That principle applies especially well to this case.
Boyle also requires evidence showing relationships between members of the enterprise. The majority argues that there was little overlap, in that Pinson was the only person involved in all four ventures. Boyle cautions us, however, that an enterprise need not necessarily have “an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages.” See id. at 945-47,129 S.Ct. 2237. Accordingly, the government need not show that the enterprise had any formal *174 hierarchy, name, rules, or absolute continuity in membership; indeed “different members may perform different roles at different times.” Id. at 948, 129 S.Ct. 2237. Furthermore, “nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.” Id.
In this case, the government presented substantial evidence of interrelatedness between the enterprise’s various members. Mims, Robinson, Wright, Williams, and Givens were each involved in two of the four schemes. Additionally, some of these individuals helped facilitate other members’ participation in Pinson’s various ventures. Robinson, for example, introduced Pinson, Wright, and Williams to Brown, the prior owner of the diaper business, and Givens introduced Pinson and Wright to each other. These introductions may have been innocuous, but the resulting schemes were anything but. Many of these individuals planned to—and in some cases, did— take advantage of their roles at SCSU or in grant-supported ventures to generate fraudulent payments for associates involved in other schemes. While I agree that the evidence is not overwhelming, a rational jury could have found a sufficient relationship among members of the enterprise.
Other than proving the existence of a RICO enterprise, the government also needed to prove a pattern of racketeering activity. To establish such a pattern, the government had to show “continuity plus relationship.” H.J. Inc., 492 U.S. at 239, 109 S.Ct. 2893 (emphasis omitted) (quoting S. Rep. No. 91-617, at 158 (1969)). “Relationship” refers to whether the two predicate acts are sufficiently related to each other or the enterprise itself. Id. at 240, 109 S.Ct. 2893. The government can prove “relationship” in a variety of ways, including focusing on whether the acts have “similar purposes, results, participants, victims, or methods of commission.” ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 182 (4th Cir. 2002) (quoting H.J. Inc., 492 U.S. at 240, 109 S.Ct. 2893). Under that broad standard, and viewing the evidence in the light most favorable to the government, the predicate acts in this case were related enough to each other because of their common purpose and similar participants and methods. All acts aimed to enrich Pinson and his associates, most of whom knew each other and participated in at least two schemes. All of the acts also involved misuse of public funds, by either exploiting public positions for kickbacks or fraudulently managing grant payments.
“Continuity,” on the other hand, refers to whether the predicate acts constitute a threat of continuing racketeering activity. H.J. Inc., 492 U.S. at 240-41, 109 S.Ct. 2893. The government can prove a threat of continuing activity either by demonstrating “repeated” racketeering conduct over a “substantial” period of time (“closed-end” continuity), or by showing “past conduct that by its nature projects into the future with a threat of repetition” (“open-ended” continuity). Id. at 241-42, 109 S.Ct. 2893.
Here, the government presented evidence of past conduct which a jury could find demonstrated a threat of repetition. At trial, Givens testified that both- he and Pinson expected to continue using their University positions to benefit themselves and their business partners by influencing the University’s energy contracting and purchasing decisions. In particular, Givens testified to planning ways to steer University business to Mims and other associates of Pinson. Mims also testified about the group’s involvement in both grant-related frauds, as well as his attempt to get on the board of the Columbia Housing Authority so that Pinson and his partners could *175 “have control or their people in place on the Board” for other projects. J.A. 1161.
We have found that certain kickback schemes, which rely on an official improperly using the powers of his position, may perpetuate themselves if the culpable official remains in that position. See United States v. Grubb, 11 F.3d 426, 440 (4th Cir. 1993) (finding that a public official was likely to continue improperly influencing elections as long as he remained in office, based on his past conduct). And courts have also found in certain circumstances that grant-related fraud can present a sufficient threat of repetition. See United States v. Hively, 437 F.3d 752, 762 (8th Cir. 2006) (finding open-ended continuity in part because defendant was still improperly receiving grant money “[a]t the time the search warrant was executed”).
While we today correctly reject the notion that “any person in an authoritative position involved in racketeering, no matter how slight, would inherently present a threat of continued crimes” Op. at 164, a jury didn’t need to accept that argument to convict Pinson of RICO conspiracy. Instead, it could rely on evidence of the group’s past conduct, its plans to continue perpetuating fraud,[2] and evidence about positions of power that Pinson and others held, in order to find a threat of continuing criminal activity. That evidence (when viewed in the light most favorable to the government) established that fraudulent activity involving public funds was a “regular way of doing business” for Pinson and his associates. H.J. Inc., 492 U.S. at 242, 109 S.Ct. 2893.
[[Image here]]
The prosecution’s failure to prove government program theft was “clear.” United States v. Chittenden, 848 F.3d 188, 195 (4th Cir. 2017). There was no such “clear” failure for RICO conspiracy. A jury could reasonably find that the government proved a RICO enterprise existed, and that it posed a threat of continuing racketeering activity. Accordingly, I would affirm Pinson’s conviction for RICO conspiracy.

. Section 1961(1) defines the'types of predicate activity that are subject to sanction under RICO, and includes (among other crimes) money laundering, mail fraud, and wire fraud. The jury convicted Pinson of mail and wire fraud, money laundering, and honest services fraud; since we uphold those convictions, the government has met its burden on this second element.

. Pinson and Mims continued to submit false pay applications to the Columbia Housing Authority for a few months after investigators began wiretapping Pinson’s calls.