[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12894

Non-Argument Calendar

_____

DJ LINCOLN ENTERPRISES, INC.,

Plaintiff-Appellant,

*versus*

GOOGLE LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:20-cv-14159-RLR

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant DJ Lincoln Enterprises, Inc. (Lincoln) appeals from the district court's dismissal of its complaint alleging racketeering and fraud by Defendant-Appellee Google LLC (Google). The central allegation in the complaint is that Google told Lincoln it could increase its web traffic by altering its website, while in reality Google was secretly downgrading Lincoln's search results because its owners were political conservatives. The district court dismissed the complaint for failure to state a claim. After careful review, we affirm.

## I.    Background

Lincoln is an assisted living and senior care services company, with its principal office in Port St. Lucie, Florida. Between 2014 and 2019, Lincoln operated a website through which caregivers could connect with seniors in need of assisted living and caregiving services. Lincoln is owned and managed by Darren and Jennifer Lincoln, who are both conservative Republicans. Lincoln says that between 2016 and 2018, it communicated in blogs and chat rooms with Google, as well as with some outside engineers and consultants, about how to increase the number of visits to Lincoln's website. Google and its associates provided instructions on how Lincoln could optimize its search results, and Lincoln implemented those instructions. But its efforts proved to be fruitless,

Lincoln says, because Google had placed it on a "blacklist," ensuring that Lincoln's search results were censored and downgraded. Lincoln claims that Google's actions were motivated by bias against businesses owned by conservatives.

Lincoln filed its original complaint against Google in May 2020 seeking damages for loss of business income and damage to Lincoln's good will and professional reputation. The gravamen of the complaint was that Google discriminated against Lincoln because Lincoln's owners were conservative Republicans, and that Google failed to disclose its bias. Several months later, in July 2020, Google moved to dismiss the complaint. Lincoln then filed an Amended Complaint, adding several additional causes of action. Google filed a second motion to dismiss, which the district court granted without prejudice, allowing Lincoln one more opportunity to amend.

Lincoln then filed a Second Amended Complaint (SAC) setting forth the following claims: violation of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) (Count 1), declaratory and injunctive relief for the federal RICO violation, 18 U.S.C. § 1964(a) (Count 2), violation of Florida's RICO statute, Fla. Stat. § 772.103 (Count 3), violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. § 501.204 (Count 4), fraud in the inducement and actual fraud (Count 5), and constructive fraud (Count 6). Google moved to dismiss the SAC, and the district court granted the motion, this time with prejudice.

First, as to the federal and Florida RICO claims in Counts 1–3, the district court found that Lincoln failed to plausibly allege the existence of two distinct entities—a person and an enterprise—that were engaged in a common purpose. Second, as to the Florida fraud claims alleged in Counts 4–6, the district court found that the allegations failed to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Further, to the extent Lincoln's fraud claims relied on Google's failure to disclose information, Lincoln failed to allege the existence of any special relationship that would a create a duty to disclose under Florida law. In dismissing the SAC with prejudice, the district court noted that the SAC suffered from the same pleading deficiencies that the court had identified when it dismissed the Amended Complaint. Lincoln timely filed this appeal.

## II.    Standard of Review

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). At the motion-to-dismiss stage, we accept as true the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.*

## III.    Discussion

### A.    Federal and Florida RICO Claims

On appeal, Lincoln first challenges the dismissal of the RICO claims alleged in Counts 1–3 of the SAC. We begin with the federal RICO claims alleged in Counts 1 and 2.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In addition to creating criminal liability, RICO creates a civil cause of action for "[a]ny person injured in his business or property" by a violation of § 1962. 18 U.S.C. § 1964(c).

A plaintiff suing under RICO must allege six elements: "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). A claim must be dismissed if it fails to plausibly allege any one of these six elements. *Id.*

As to the second element—an enterprise—a plaintiff must allege "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). We have explained that "a defendant corporation cannot be distinct for RICO purposes from its own officers, agents, and employees when those individuals are operating in their official capacities for the corporation." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016) ("The Supreme Court has made it crystal clear that the racketeering enterprise and the defendant must be two separate entities."). RICO defines an

"enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An 'association-in-fact enterprise is simply a continuing unit that functions with a common purpose.'" *Cisneros*, 972 F.3d at 1211 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)). A plaintiff must allege more than an "abstract common purpose, such as a generally shared interest in making money." *Id.* "[W]here the participants' ultimate purpose is to make money for themselves," we have explained, "a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.*

Here, the SAC alleges that Google was part of an association-in-fact enterprise, consisting of "Alphabet, Inc., its CEO and Board of Directors, YouTube, its CEO and Board of Directors, and outside third-party engineers, search engine optimizers, and digital sales marketing consultants . . . who operated with a common purpose." But, importantly, Lincoln fails to explain how Alphabet, Inc. (the parent company of Google), YouTube (which is owned by Google), or any of the individuals associated with those organizations, operated outside their official capacity. *See Ray*, 836 F.3d at 1355. Therefore, Lincoln fails to allege that these entities and individuals are distinct from Google for RICO purposes. *See id.*

And with respect to what Lincoln calls "outside" parties, the SAC fails to plausibly allege more than an abstract common purpose. Lincoln points to a footnote in the SAC that identifies three

companies—Godaddy.com, Bernstein-Rein, and Ucodice.com—and alleges, conclusorily, that they shared a common purpose with Google: to fraudulently induce Lincoln in connection with the optimization of Google search results. Besides naming these companies and concluding that they shared a common purpose with Google, the SAC does not offer any facts to plausibly support the inference that these companies were somehow participants in a scheme to defraud Lincoln. Therefore, the district court correctly concluded that Lincoln did not plausibly allege the existence of an enterprise, as required by the federal RICO Act.

Florida's RICO statute, Fla. Stat. § 772.103, is materially the same as its federal counterpart in requiring an enterprise operating with a common purpose. *Doorbal v. State*, 983 So. 2d 464, 492 (Fla. 2008) (per curiam). So, for the same reasons Lincoln failed to plausibly allege a federal RICO claim on Counts 1 and 2, it failed to plausibly allege a Florida RICO claim on Count 3.

### B.    Florida Fraud Claims

Lincoln also challenges the dismissal of Counts 4–6 of the SAC: violation of FDUTPA, fraud in the inducement and actual fraud, and constructive fraud. Because these claims allege fraud, they are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that a party "state with particularity the circumstances constituting fraud or mistake." Under Rule 9(b), Lincoln had to plead: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner

in which these statements misled [Lincoln]; and (4) what the defendants gained by the alleged fraud." *Cisneros*, 972 F.3d at 1216.

Lincoln did not meet these requirements. Taking, for example, the first requirement, the SAC wholly fails to identify the precise statements made by Google or its associates. And Lincoln's briefs do not meaningfully explain this failure, other than to suggest that we should relax the pleading requirement because "the information supporting [its] case is under the exclusive control of the defendant." *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003). Even assuming we could relax the pleading requirements under such a circumstance, Lincoln does not explain how the precise statements Google made are within Google's exclusive control when those very statements were allegedly communicated to Lincoln. Similarly, as to the time, place, and person responsible for the alleged statements, the SAC offers nothing more than vague references to comments by Google and its agents in Google blogs and chat rooms between 2014 and 2019. These allegations fall well short of the particularity that Rule 9(b) requires.

Finally, we agree with the district court that Lincoln's fraud allegations in Counts 4–6 suffer from an additional defect: each depends in part on *omissions* rather than affirmative misrepresentations. Specifically, Lincoln asserts that Google owed it a duty to disclose its intention to censor and suppress Lincoln's Google search results. Florida law, however, imposes a duty to disclose only in specific circumstances. *See TransPetrol, Ltd. v. Radulovic*,

21-12894              Opinion of the Court              9

764 So. 2d 878, 879–80 (Fla. Dist. Ct. App. 2000) (A duty to disclose may arise where there is a "confidential, contractual, or fiduciary relationship."). Lincoln fails to allege any such relationship here, and thus Google had no duty to disclose.

Because Lincoln's allegations of fraud lack the particularity required under Rule 9(b), and because Florida law does not support a duty to disclose absent a special relationship between Google and Lincoln, Lincoln failed to state a claim for relief on Counts 4–6 of the SAC. Finding no error in the district court's order granting Google's motion to dismiss, we affirm in all respects.

**AFFIRMED.**