12-2788-cr & 12-2789-cr
*United States v. Krasniqi*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 28th day of January, two thousand fourteen.

Present:     Jon O. Newman
             Peter W. Hall
             Gerard E. Lynch

                      *Circuit Judges*,

_____

 United States of America,

               *Plaintiff-Appellee*,

          v.                                                 12-2788-cr
                                                             12-2789-cr
Bruno Krasniqi, Saimir Krasniqi.,

               *Defendants-Appellants*,

Erkliant Sula, *et al*,

               *Defendants*.[1]

_____

FOR APPELLANTS:          Brendan White, Diarmuid White (on the *brief*), White &
                         White, New York, NY.

FOR APPELLEE:            Ian McGinley, Assistant United States Attorney, and Brent
                         S. Wible (on the *brief*), Assistant United States Attorney,

---

[1] The Clerk of the Court is directed to amend the caption as set out above.

*for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

Appeal from the United States District Court for the Southern District of New York (Forrest, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Bruno Krasniqi ("Bruno") and Saimir Krasniqi ("Saimir") (collectively the "Krasniqis") appeal from judgments of conviction on one substantive RICO count, one count of RICO conspiracy, one count of conspiracy to possess and distribute marijuana, one count of conspiracy to commit Hobbs Act robbery, one count of possessing and brandishing firearms during and in furtherance of a drug offense, one count of kidnapping in aid of racketeering, one count of possessing and brandishing firearms during and in furtherance of a kidnapping, two counts of murder in aid of racketeering, one count of conspiracy to obstruct justice, and one count of obstruction of justice.

The Krasniqis challenge their convictions on multiple grounds: (1) insufficiency of the evidence showing the existence of the charged criminal enterprise; (2) insufficiency of the evidence that the murder of Erenick Grezda was committed in aid of racketeering; (3) insufficiency of the evidence to prove Saimir's participation in the kidnapping of Arben Dinkollari; (4) insufficiency of the evidence of Bruno and Saimir's participation in an extortion conspiracy; (5) the district court's abuse of discretion in limiting the cross-examination of Special Agent Callahan; and (6) the denial of Bruno's right to counsel of his choice. We assume the parties' familiarity with the underlying facts and history of the case, as well as the issues on appeal.

An appellant bears a "heavy burden" in challenging the sufficiency of the evidence. *United States v. Diaz*, 176 F.3d 52, 89 (2d Cir. 1999). In evaluating such a claim, the Court must "view[] all of the evidence in the light most favorable to the government," *United States v. Aleskerova*, 300 F.3d 286, 292 (2d Cir. 2002), and the Court will not disturb a conviction on the basis of insufficient evidence unless no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Bruno*, 383 F.3d 65, 82 (2d Cir. 2004) (internal quotation marks omitted).

The Krasniqis argue that the evidence presented at trial failed to establish the existence of an enterprise, and at most showed a series of ad hoc alliances. The indictment charged the Krasniqis with engaging in a RICO enterprise by committing robbery, murder, arson, kidnapping, possessing and distributing marijuana, transporting stolen property, and obstructing justice. "The term 'enterprise' is defined as including any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *United States v. Turkette*, 452 U.S. 576, 580 (1981) (second set of internal quotation marks omitted; citations omitted). "[T]he existence of an association-in-fact is oftentimes more readily proven by 'what it *does*, rather than by abstract analysis of its structure.'" *United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir. 1991) (emphasis in original) (quoting *United States v. Bagaric*, 706 F.2d 42, 56 (2d Cir. 1983)).

It is beyond peradventure that a RICO enterprise is not required to have business-like attributes such as a name, a hierarchical structure, a set membership, or established rules. *See Boyle v. United States*, 556 U.S. 938, 948 (2009) (rejecting petitioner's argument that a RICO enterprise must have a hierarchy, name, and rules); *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010) ("An [] associated in fact enterprise may continue to exist even though it undergoes

3

changes in membership." (internal quotation marks and citation omitted)). Here, the testimony at trial established that the Krasniqi enterprise had multiple members who had a shared purpose of selling drugs and committing various acts of violence. Indeed, members of the organization testified that they perceived themselves to be part of a "crew" that was led by Saimir and Bruno. On that basis alone, drawing all reasonable inferences in favor of the government, the evidence at trial was sufficient to prove the existence of a RICO enterprise.

Next, the Krasniqis claim that the evidence was insufficient to establish that they murdered Grezda in order to maintain or increase their position in the Krasniqi enterprise. The language "maintaining or increasing position" in 18 U.S.C. § 1959 "should be construed liberally." *Bruno*, 383 F.3d 65 at 83 (internal quotation marks omitted). "Self-promotion need not have been the defendant's only, or even his primary, concern, if [the violent crime] was committed 'as an integral aspect of membership' in the enterprise." *United States v. Thai*, 29 F.3d 785, 817 (2d Cir. 1994) (quoting *United States v. Concepcion*, 983 F.2d 369, 381(2d Cir. 1992)). "The motive requirement is thus satisfied if the jury could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *Id.* (internal quotation marks omitted). A murder can both be "an act of personal revenge" and still be "tied to . . . racketeering activities." *United States v. James*, 239 F.3d 120, 124 n.5 (2d Cir. 2000).

The evidence at trial established that Grezda was a member of the Krasniqi enterprise and the Krasniqis believed that Grezda had betrayed them by facilitating Bruno's kidnapping. The jury was thus entitled to infer that Bruno and Saimir killed Grezda to maintain their positions as

4

leaders of the enterprise and to punish Grezda for his disloyalty. Given the dual purposes of these acts, this evidence satisfied the motive required to be proven under § 1959(a).

Saimir contends that the evidence was insufficient to prove he participated in the kidnapping of Arben Dinkollari. The evidence at trial established that Saimir was not only present when Dinkollari was kidnapped but participated in the kidnapping by spreading plastic on the living room carpet and giving Oliger Merko a pillow to use as a gunshot silencer. Viewing the evidence in the light most favorable to the government, the evidence was sufficient to substantiate Saimir's involvement in the kidnapping.

The Krasniqis challenge the sufficiency of the evidence that they participated in "Racketeering Act Eleven: Extortion Conspiracy." At trial a cooperating witness testified to the Krasniqis' extortion activities. The evidence was thus sufficient to support the jury's verdict as to this act.

The Krasniqis contend that the district court committed reversible error by precluding them from cross-examining FBI Special Agent Joseph Callahan to elicit his opinions concerning the leadership of the Krasniqi enterprise. "Only when th[e] broad discretion [of the district court] is abused will we reverse [the] court's decision to restrict cross-examination." *United States v. Figueroa*, 548 F.3d 222, 226 (2d Cir. 2008) (internal quotation marks omitted; alterations in original). The district court properly excluded Agent Callahan's lay opinion regarding the structure of the criminal enterprise. *See, e.g., United States v. Garcia*, 413 F.3d 201, 212 (2d Cir. 2005) ("[W]hen an agent relies on the entirety or totality of information gathered in an investigation to offer a lay opinion as to a person's culpable role in a charged crime, he is not presenting the jury with unique insights of an eyewitness's personal perceptions" (internal quotation marks omitted)). *Cf. United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir.

5

2003) ("[When] testimony of the case agent . . . provid[es] an overall conclusion of criminal conduct, the process tends to more closely resemble the grand jury practice, improper at trial, of a single agent simply summarizing an investigation by others that is not part of the record."). Here, the district court acted well within its discretion in excluding the proposed cross-examination of Agent Callahan.

Bruno argues that he was deprived of his right to his choice of counsel, asserting he did not knowing and voluntarily waive his right to have Henry Scharg as his attorney. "Although a defendant's right to counsel of his choice is not an absolute one, we have consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is a right of constitutional dimension." *United States v. Perez*, 325 F.3d 115, 124 (2d Cir. 2003) (citation, alterations, and quotation marks omitted). When "the court determines that the attorney suffers from a lesser [actual] or only a potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice." *Id.* at 125. (internal quotation marks omitted; alterations in original); *see also United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012). ("Where the right to counsel of one's choice conflicts with the right to an attorney of undivided loyalty, the determination of which right is to take precedence must generally be left to the defendant, who may make a knowing and intelligent waiver of his right to a conflict-free lawyer if he desires to continue the representation.").

In *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), this Court established procedures the trial court should follow when a criminal defendant's right to representation by an attorney without a conflict of interest is raised as an issue. Under the *Curcio* procedures, "the trial court should: (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine

6

through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel." *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986) (citing *Curcio*, 680 F.2d at 888-90).

In this case, the district court held a *Curcio* hearing to determine if a potential conflict of interest affected Scharg's representation of Bruno. Notwithstanding the Government's offer to stipulate that it would not elicit testimony identifying Scharg by name, at the hearing Bruno expressed his desire to call Scharg as a witness at trial. The district court's colloquy with Bruno during the *Curcio* hearing reflects that Bruno knowingly and intelligently waived his right to be represented by Scharg.

We have considered the Krasniqis' remaining arguments and find them to be without merit. Accordingly, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk