19-3313 (L)
United States v. White

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of August, two thousand twenty-one.

PRESENT:   ROBERT D. SACK,
                  STEVEN J. MENASHI,
                          *Circuit Judges*,
                  LEWIS A. KAPLAN,[*]
                          *Judge.*

_____

UNITED STATES OF AMERICA,

     *Appellant-Cross-Appellee*,

   v.

                               Nos. 19-3313-cr(L),
                               20-805-cr(XAP)

_____

[*] Judge Lewis A. Kaplan of the United States District Court for the Southern District of New York, sitting by designation.

MICHAEL WHITE, AKA MIKE,

        *Defendant-Appellee-Cross-Appellant,*

JOEY COLON, DEMETRIUS WINGO, AKA
POPPA, ANTHONY BUSH, AKA ANT, DAVID
OQUENDO, CHRISTIAN PEREZ, AKA PUN,
JAMES ROBINSON, ALLEN KNIGHT, AKA
STUTTER, MIGUEL CALDERON, AKA MICK,
JAMES SNIPES, AKA 80 MESE, WELSEY
MONGE, AKA WES, OSCAR BRIONES, AKA
O BLOCK, ROY ROBINSON, AKA MOB,

        *Defendants.*

_____

| | |
|---|---|
| *For Appellant-Cross-Appellee*: | ALEXANDRA ROTHMAN, Assistant United States Attorney (Christopher Clore, Jordan Estes, Thomas McKay, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY |
| *For Defendant-Appellant-Cross-Appellee*: | ELIZABETH LATIF, Law Offices of Elizabeth Latif, PLLC, West Hartford, CT |

Appeal from a judgment of the United States District Court for the Southern District of New York (Torres, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of acquittal of the district court as to Count One is **REVERSED**; that the judgments of conviction of the district court as to Counts Two, Four, and Eleven are **AFFIRMED**; and that the case is **REMANDED** for resentencing on Count One.

Defendant-Appellant-Cross-Appellee Michael White was charged with four counts in a superseding indictment filed in the U.S. District Court for the Southern District of New York. Count One charged White with racketeering conspiracy in connection with an alleged Racketeering Influenced and Corrupt Organization Act (RICO) enterprise known as MBG, in violation of 18 U.S.C. § 1962(d). Count Two charged White with racketeering conspiracy in connection with an alleged RICO enterprise known as YGz, in violation 18 U.S.C. § 1962(d). Count Four charged White with committing a violent crime in aid of racketeering (VCAR) in connection with YGz, in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2. Count Eleven charged White with using, carrying, and possessing firearms in

3

furtherance of the racketeering conspiracy charged in Count Two and the VCAR charged in Count Four, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2.

A jury found White guilty on all counts. White moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the evidence was insufficient to support the jury's verdict. The district court granted White's motion with respect to Count One but affirmed the jury's judgments of conviction as to Counts Two, Four, and Eleven. The government appeals from the district court's judgment of acquittal as to Count One; White cross-appeals from the court's denial of his motion as to Counts Two, Four, and Eleven. White also appeals from the district court's denial of his motion to dismiss Count Eleven as time-barred. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I**

"[W]e review the grant or denial of a judgment of acquittal under Rule 29 *de novo*." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008). In so doing, "we apply the same standard as the district court applied in its review of the evidence." *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003). "Under Rule 29, a district court will grant a motion to enter a judgment of acquittal on grounds of

4

insufficient evidence if it concludes that no rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* In making that assessment, "the court must view the evidence presented in the light most favorable to the government," and "[a]ll permissible inferences must be drawn in the government's favor." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). A court may therefore grant a defendant's motion for a judgment of acquittal "only 'if the evidence that the defendant committed the crime alleged was nonexistent or … meager.'" *Jackson*, 335 F.3d at 180. Accordingly, "[a] defendant who challenges the sufficiency of the evidence to support his conviction 'bears a heavy burden.'" *Id.*

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." *Id.* Rule 29 "does not provide the trial court with an opportunity to 'substitute its own determination of … the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Guadagna*, 183 F.3d at 129. "[I]t is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." *Jackson*, 335 F.3d at 180. "In fact, if the court 'concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the

5

jury decide the matter.'" *Guadagna*, 183 F.3d at 129 (alteration omitted). The deference traditionally afforded to the jury's verdict "is especially important when reviewing a conviction for conspiracy … because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (internal quotation marks omitted).

Under these principles, we reverse the district court's judgment of acquittal as to White's conviction on Count One. As noted above, Count One charged White with RICO conspiracy in connection with MBG, a criminal organization based in the Mill Brook Houses, a housing project in the Bronx, New York. The jury's verdict on that count required it to find that White "agreed with his criminal associates to form [a] RICO enterprise." *United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011). In reversing the jury's verdict, the district court determined that there was insufficient evidence to support that finding, holding that "no rational juror could find beyond a reasonable doubt that MBG constituted a RICO enterprise." Special App'x 33. In so holding, the district court erred.

At the outset, we note that the government was not required to prove "that MBG constituted a RICO enterprise," *id.*, to establish White's guilt for RICO

6

conspiracy. "[T]he establishment of an enterprise is not an element of the RICO *conspiracy* offense." *Applins*, 637 F.3d at 75 (emphasis added); *see also United States v. Delgado*, 972 F.3d 63, 79 (2d Cir. 2020) ("[I]n contrast to RICO's substantive offenses … 'the Government need not establish the existence of an enterprise' to 'prove a RICO conspiracy.'"). Rather, because "the crime of RICO conspiracy 'centers on the act of *agreement*,'" *Delgado*, 972 F.3d at 79, the government "need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme," *United States v. Arrington*, 941 F.3d 24, 36-37 (2d Cir. 2019). In other words, the government need only show "that the defendants *agreed that an enterprise would be established* … and that the appellants were aware of the general nature of the conspiracy" to secure a conviction for RICO conspiracy, not that a RICO enterprise actually existed. *Applins*, 637 F.3d at 77. The district court thus erred in holding that the government failed to prove White's guilt as to Count One because "no rational juror could find beyond a reasonable doubt that MBG constituted a RICO enterprise." Special App'x 33.

But even if the government had been required to prove that MBG constituted a RICO enterprise, the government carried that burden. An "enterprise" is defined by the RICO Act as, *inter alia*, "any union or group of

7

individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This definition "is obviously broad, encompassing '*any* … group of individuals associated in fact." *Boyle v. United States*, 556 U.S. 938, 944 (2009). Indeed, "the very concept of an association in fact is expansive," and "the RICO statute provides that its terms are to be 'liberally construed to effectuate its remedial purposes.'" *Id.* (citing 18 U.S.C. § 1961 note). Accordingly, any "group of persons associated together for a common purpose of engaging in a course of conduct" may constitute a RICO enterprise if the evidence shows the existence of "an ongoing organization, formal or informal" whose "various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

There was sufficient evidence from which a rational juror could find that MBG met this expansive definition. That evidence included testimony from cooperating witnesses that MBG had a defined territory; that members of MBG had common rivals; and that MBG members discussed shootings with each other to help anticipate retaliation from rivals. *See* MW Tr. 113-14, 193-94, 595-97, 615-16.[1] The evidence also included photographs showing that MBG members had

---

[1] "MW Tr." refers to the transcript of Michael White's trial, which is included in the Appendix.

tattoos signifying their membership in MBG and affirmed their membership in MBG through posts on social media. App'x 400-410. Most significantly, the evidence showed that MBG members worked together for a common purpose—chiefly, enriching themselves through the sale of narcotics. Cooperating witnesses testified that MBG members had the same suppliers, served the same customers, and cooked, bagged, and stored drugs at a single apartment in the Mill Brook Houses. MW Tr. 282-85, 664-66. The same witnesses further testified that MBG members bought guns for fellow MBG members to use to retaliate against MBG's rivals. *Id.* at 168, 203-04, 225, 375-76.

Viewed collectively and in the light most favorable to the government, as required on review of a Rule 29 motion, the evidence was sufficient to permit the jury to find that MBG "had multiple members who had a shared purpose of selling drugs and committing various acts of violence" and thus constituted a RICO enterprise. *United States v. Krasniqi*, 555 F. App'x 14, 17 (2d Cir. 2014); *see Turkette*, 452 U.S. at 583 ("The enterprise is … a group of persons associated together for a common purpose of engaging in a course of conduct.").

In holding otherwise, the district court committed two errors. First, the district court improperly assumed that a RICO enterprise must have certain

structural features that are not required under the statute. For instance, the district court found it significant that there was "little to no evidence that MBG had any kind of hierarchy, induction requirements or rituals, decision-making procedure, or that MBG members were expected to serve any kind of roles" and that "the evidence of any sort of membership rule or requirement [was] weak at best." Special App'x 33-35. These findings, even if correct, would not establish that MBG was not a RICO enterprise. As the Supreme Court has explained, a RICO enterprise "need not have a hierarchical structure or a 'chain of command,'" and "decisions may be made on an ad hoc basis and by any number of methods." *Boyle*, 556 U.S. at 948. Moreover, "[m]embers of the group need not have fixed roles," nor must the group have "a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies." *Id.* The district court erred in holding that MBG did not constitute a RICO enterprise due to its purported lack of these features. *See Krasniqi*, 555 F. App'x at 17 ("It is beyond peradventure that a RICO enterprise is not required to have business-like attributes such as a name, a hierarchical structure, a set membership, or established rules.") (citing *Boyle*, 556 U.S. at 948).

The district court also erred by substituting its own determinations for the jury's. The district court found, for example, that "the evidence shows that the guns [bought by MBG members] were actually bought or used in connection with YGz, not MBG" and that, because many MBG members joined YGz before committing shootings against a rival gang called Killbrook, "any inference that these shootings were committed in furtherance of MBG" was "undermine[d]." Special App'x 35, 39. But it was not for the district court to make such determinations about what the evidence showed. *See United States v. Florez*, 447 F.3d 145, 155 (2d Cir. 2006) ("[T]he task of choosing among permissible competing inferences is for the jury, not a reviewing court."). One of the government's key witnesses repeatedly affirmed that guns were purchased for use by MBG members. *See* MW Tr. 168, 203-04, 286, 375. The government's witnesses also testified that MBG members, including White, committed shootings against Killbrook and sometimes used MBG guns to do so. *Id.* at 161-68, 181-83, 188-95, 597-600, 654-64. Although it is difficult to disentangle the activities of MBG and YGz in light of their overlapping membership and common rivalry with Killbrook, a reasonable juror could find based on this testimony that at least some of the guns were owned and used in the furtherance of the MBG racketeering conspiracy. That

11

inference would support the conclusion that MBG constituted a RICO enterprise. *See United States v. Coonan*, 938 F.2d 1553, 1559 (2d Cir. 1991) ("Common sense suggests that the existence of an association-in-fact is oftentimes more readily proven by 'what it *does*, rather than by abstract analysis of its structure.'").

The record thus demonstrates that there was "sufficient evidence to permit the jury to find that [White and his co-conspirators] agreed to form a RICO enterprise and to conduct, and participate in, the conduct of [MBG's] affairs." *Applins*, 637 F.3d at 80. Accordingly, we reverse the district court's judgment of acquittal as to Count One and reinstate the jury's verdict on that count.

**II**

We affirm the district court's denial of White's motion for acquittal as to Counts Two, Four, and Eleven. There was sufficient evidence to support the jury's judgments of conviction as to each of those counts.

White contends that there was insufficient evidence to support his conviction on Count Two because "the government failed to prove the existence of the YGz enterprise beyond a reasonable doubt or that White knowingly agreed to participate in the YGz enterprise." Appellant's Br. 14 (capitalization omitted). These claims are meritless. The evidence at trial established that YGz members,

12

including White, identified themselves with gang tattoos, posts on social media, a gang handshake, and a gang hand-symbol. App'x 399, 401, 403-07, 409-10; MW Tr. 136-39. Because "[t]he evidence demonstrated … that [YGz] gang members … received tattoos signifying their membership in the gang, and flashed the [YGz] hand sign … to 'represent' that they were members of [YGz]," we "have little difficulty concluding that the government proved beyond a reasonable doubt that the defendants agreed that an enterprise would be established" and that White was a member of that enterprise. *Applins*, 637 F.3d at 77. Testimony at White's trial also established that YGz members, including White, worked together for common purposes—selling narcotics and committing acts of violence against rivals. MW Tr. 256-58, 264-68, 281-85, 665-66. The trial evidence was therefore sufficient for the jury to find that YGz was "an ongoing organization … [whose] associates function as a continuing unit" and that White knowingly participated in that enterprise. *Turkette*, 452 U.S. at 583. We accordingly affirm the district court's denial of White's motion for a judgment of acquittal on Count Two.

We reach the same conclusion with respect to Count Four, which charged White with committing a VCAR in connection with the YGz enterprise. The VCAR charged in that count was a shooting White committed in 2012 against rival gang

13

members at the Cypress Avenue subway station in the Bronx. On appeal, White does not argue that the evidence was insufficient to find that he committed the shooting. Rather, White contends that his conviction on Count Four must be dismissed either because there was insufficient evidence to support his conviction on Count Two or, in the alternative, because there was insufficient evidence from which a rational juror could find that White committed the shooting to advance or maintain his status in YGz. *See* Appellant's Br. 20-26.

As explained above, there was sufficient evidence to support White's conviction on Count Two, so White's claim to the contrary provides no basis for vacating his conviction on Count Four. White's argument in the alternative also fails. "The VCAR statute authorizes the government to prosecute defendants for 'violent crimes intended, *inter alia*, to permit a defendant to maintain or increase [his] position in a RICO enterprise.'" *United States v. Pimentel*, 346 F.3d 285, 295 (2d Cir. 2003). Such intent may be inferred if the jury could find "that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership." *United States v. Burden*, 600 F.3d 204, 220 (2d Cir. 2010).

Here, the evidence was sufficient to support the jury's finding that White committed the subway shooting in the furtherance of his membership in YGz. The government's key witnesses testified that YGz members could climb the ranks in the organization by committing acts of violence. MW Tr. 135, 251, 589, 611-12. They further testified that YGz had a leadership position called "Big Gun" that one would obtain by committing shootings. *Id.* at 115, 133-36, 251, 589, 603. A witness also testified that White obtained "Big Gun" status in 2014—after the Cypress Avenue shooting—by being one of the "people [in the gang] that did the most shootings." *Id.* at 249. And that witness further testified that White proclaimed his membership in YGz *immediately before committing the shooting*, which supports the inference that the shooting was committed in the furtherance of White's membership in YGz. *Id.* at 219-25. A rational juror could infer from this testimony that White committed the Cyprus Avenue subway shooting, at least in part, because it was expected of him or because he thought it would help him maintain or advance his position in YGz.

We accordingly hold that the evidence was sufficient to sustain the jury's verdict as to Count Four and affirm the district court's denial of White's motion for a judgment of acquittal as to that count.

15

We similarly affirm the district court's denial of White's motion for a judgment of acquittal as to Count Eleven. As noted above, Count Eleven charged White with using, carrying, and possessing firearms in furtherance of the YGz racketeering conspiracy charged in Count Two and the VCAR charged in Count Four, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. White argues that his conviction on Count Eleven must be vacated due to the government's purported failure to prove the existence of the YGz racketeering conspiracy charged in Count Two. Appellant's Br. 20. Because we conclude that the government met its burden of proof with respect to Count Two, we reject this argument and affirm the district court's denial of White's motion for a judgment of acquittal on Count Eleven.

## III

We also reject White's contention that Count Eleven was time-barred and affirm the district court's holding that it was not. "[A] superseding indictment that supplants a pending timely indictment relates back to the original pleading and inherits its timelines as long as the later indictment does not materially broaden or substantially amend the original charges." *United States v. Salmonese*, 352 F.3d 608, 622 (2d Cir. 2003). To determine whether a superseding indictment amends the

16

original charges, "we will consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *Id.*

Count Eleven of the superseding indictment did none of these things. The count charged White with the exact same offense as Count Eight of the original indictment, which it supplanted. Because both Count Eight and Count Eleven charged White with a violation of 18 U.S.C. § 924(c), Count Eleven did not contain different elements, rely on different evidence, or expose White to a potentially greater sentence than Count Eight. The *sole* difference between Count Eleven and Count Eight is that Count Eight designated only Count Two as its predicate offense, whereas Count Eleven was predicated on Count Two and Count Four, both of which were charged in the original indictment. The superseding indictment's amendment of the Section 924(c) charge to include a reference to another count that was already charged in the original indictment is not a sufficiently meaningful change to defeat relation-back to the original indictment. *See United States v. Zvi*, 168 F.3d 49, 54 (2d Cir. 1999) ("Superseding indictments have been deemed timely when they simply added detail to the original charges,

narrowed rather than broadened the charges, contained amendments as to form but not substance, or were otherwise trivial or innocuous.").

White argues that the government's amendment of the indictment "require[d] [him] to litigate 'additional elements'" because "[t]he addition of the VCAR Shooting as an underlying violent crime to the § 924(c) charge in Count Eleven of the Superseding Indictment required [him] to litigate … whether the alleged shooting was a 'violent crime' under the relevant statute." Reply Br. 2. But that is not enough to show that Count Eleven is time-barred. As noted, a superseding indictment will relate back to the original indictment unless it "*materially broaden[s]* or *substantially amend[s]* the original charges." *Salmonese*, 352 F.3d at 622 (emphasis added). Amending the Section 924(c) offense charged in Count Eleven so that it was predicated on Count Four in addition to Count Two did not "materially" or "substantially" amend the indictment, even if it required White to argue that the offense charged in Count Four was not a crime of violence.

Moreover, "notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges." *United States v. Gengo*, 808 F.2d 1, 3 (2d Cir. 1986). Because Count Four was charged in the original indictment, "the amended [firearm] charge rested on the same factual allegations as the first

18

[indictment] and required no preparation of new evidence or defenses on [White's] part." *Id.* at 4. There is therefore no reason to conclude that White lacked notice of the charges asserted against him in Count Eleven or that Count Eleven unfairly prejudiced his defense.

Accordingly, we affirm the district court's judgment that Count Eleven was not time-barred.[2]

*     *     *

---

[2] White argues in a *pro se* supplemental brief that his conviction on Count Eleven should be vacated for the separate reason that it may be predicated on an offense—racketeering conspiracy—that may no longer serve as a predicate crime of violence for a charge under Section 924(c) in light of *United States v. Davis*, 139 S. Ct. 2319 (2019). White's argument is meritless because the record shows that the jury found that Count Eleven was predicated on both Count Two and Count Four. MW Tr. 1483-85. The VCAR charged in Count Four remains a valid predicate crime for the Section 924(c) offense charged in Count Eleven.

We have considered White's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **REVERSE** the district court's judgment of acquittal as to Count One, **AFFIRM** the district court's denial of White's motion for a judgment of acquittal as to Counts Two, Four, and Eleven, and **REMAND** the case for resentencing on Count One.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court