**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 22-2139

—————————

BOROUGH OF LONGPORT;
TOWNSHIP OF IRVINGTON, individually and on
behalf of all others similarly situated,

Appellants

v.

NETFLIX, INC.; HULU, LLC

—————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-21-cv-15303)
District Judge:  Honorable Stanley R. Chesler

—————————

Submitted under Third Circuit L.A.R. 34.1(a)
on May 18, 2023

Before:  SHWARTZ, ROTH and FISHER, Circuit Judges

(Opinion filed: February 29, 2024)

————————

## OPINION OF THE COURT

————————

James E. Cecchi
Kevin G. Cooper
Carella, Byrne Cecchi Olstein Brody & Agnello
5 Becker Farm Road
Roseland, NJ 07068

Tyler Graden
Joseph H. Meltzer
Melissa L. Yeates
Kessler Topaz Meltzer & Check
280 King of Prussia Road
Radnor, PA 19087

Counsel for Appellants

Mary Rose Alexander
Robert C. Collins, III
Latham & Watkins
330 N Wabash Avenue
Suite 2800
Chicago, IL 60611

Peter E. Davis
Jean Pawlow
Latham & Watkins
555 11th Street NW
Suite 1000
Washington, DC 20004

Dylan Byrd
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
Victor Jih
Wilson Sonsini Goodrich & Rosati
1900 Avenue of the Stars
Suite 288
Los Angeles, CA 90067

Arnold B. Calmann
Jakob B. Halpern
Saiber
18 Columbia Turnpike
Suite 200
Florham Park, NJ 07932

Counsel for Appellees

**ROTH**, Circuit Judge

The Borough of Longport and the Township of Irvington, two New Jersey municipalities, sued the popular video streaming companies Netflix, Inc. and Hulu, LLC. The municipalities seek to enforce a provision of the New Jersey Cable Television Act (CTA or Act), which requires cable television entities to pay franchise fees to municipalities.[1] The CTA does not, however, provide an express right of action for municipalities to enforce its provisions. We must, therefore, determine whether the CTA implies such a right. For the

---

[1] N.J. Stat. Ann. § 48:5A-1, *et seq.*

3

reasons stated below, we hold it does not, and thus we will affirm the judgment of the District Court.

## I.    Statutory Background

<u>The New Jersey Cable Television Act</u>

In 1972 the New Jersey Legislature enacted the CTA to regulate cable television companies.[2]  The Legislature sought, among other things, "to secure a desirable degree of uniformity in the practices and operations of cable television companies in" New Jersey municipalities and to protect the interests of those municipalities.[3]  To "promote [these] objectives," the

---

[2] *Id.* § 48:5A-2(b).

[3] *Id.* § 48:5A-2(c).  The Legislature noted six objectives for this regulation.  *Id.*  The five other objectives include:

Legislature vested the Board of Public Utilities (BPU) with the "authority to regulate cable television companies generally, and the[] rates, services and operations, in the manner and in accordance with the policies" of the Act.[4]

Under the CTA, a cable television company can seek two kinds of authorization from the BPU. It can seek a "franchise" for authorization to operate within a particular municipality.[5] To do so, it must first secure the municipality's consent.[6] Alternatively, a "system-wide franchise" permits a cable company to "operate a cable television system in any

---

> (1) to promote adequate, economical and efficient cable television service to the citizens and residents of [New Jersey], (2) to encourage the optimum development of the educational and community-service potentials of the cable television medium, (3) to provide just and reasonable rates and charges for cable television system services without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices, (4) to promote and encourage harmony between cable television companies and their subscribers and customers, . . . and ([5]) to cooperate with other states and with the Federal Government in promoting and coordinating efforts to regulate cable television companies effectively in the public interest.

*Id.*
[4] *Id.* § 48:5A-2(d).
[5] *Id.* § 48:5A-3(q), 48:5A-15.
[6] *Id.* § 48:5A-22.

location within" New Jersey.[7]   It need not have a municipality's consent to obtain a "system-wide franchise."[8]

Along with vesting the BPU with regulation and franchising authority, the Legislature empowered the BPU to "have [the] full right, power, authority[,] and jurisdiction" to enforce the CTA.[9]  Through this enforcement authority, the BPU may

> a. Receive or initiate complaints of the alleged violation of any of the provisions of [the CTA] . . . or of the terms and conditions of any municipal consent or franchise granted . . .
>
> b. Supervise and regulate every [cable television entity] operating within [New Jersey] . . . so far as may be necessary to carry out the purposes of [the CTA] . . .
>
> c. Institute all proceedings and investigations, hear all complaints, issue all process and orders, and render all decisions necessary to enforce the provisions of [the Act]. . . or of any municipal consents issued . . .
>
> d. Institute, or intervene as a party in, any action in any court of competent jurisdiction seeking mandamus, injunctive or other relief to compel compliance with any provision [of the CTA], of

---

[7] *Id.* § 48:5A-3(r).
[8] *Id.* § 48:5A-16.
[9] *Id.* § 48:5A-9.

> any rule, regulation or order adopted thereunder or of any municipal consent or franchise issued thereunder, or to restrain or otherwise prevent or prohibit any illegal or unauthorized conduct in connection therewith.[10]

If a cable company (or, indeed, anyone else) "has violated, intends to violate, or will violate any provisions of [the CTA]," the BPU "may institute a civil action in the Superior Court for . . . relief."[11]

The provision of the CTA at issue here is Section 48:5A-30, which requires cable companies "to make annual franchise payments in each municipality in which they own or operate cable systems and provide cable services in the amount of two percent of the . . . gross revenues received from the provision of cable services in that municipality."[12] The municipalities here seek to enforce this franchise payment provision on their own.

## II.    Procedural History

Netflix and Hulu are two of the world's most popular video streaming services. The municipalities sued them on behalf of a putative class of all New Jersey municipalities. They alleged that Netflix and Hulu failed to pay them the franchise fees required under the CTA. Netflix and Hulu both moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The District

---

[10] *Id.* § 48:5A-9.

[11] *Id.* § 48:5A-51(c).

[12] JA6 (citing N.J.S.A. § 48:5A-30(a)–(d)).

7

Court granted the motions, concluding that the municipalities have no private right of action under the CTA. The municipalities appeal.

### III.    Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). We have jurisdiction under 28 U.S.C. § 1291.

We exercise de novo review over a district court's grant of a motion to dismiss.[13] We must "accept[] all well-pleaded allegations in the complaint as true and view[] them in the light most favorable to the plaintiff."[14]

### IV.    Discussion

A plaintiff must have a private right of action to bring a claim to enforce a statute.[15] If a legislature fails to provide a private right of action expressly, courts may determine whether it did so implicitly.[16] The municipalities do not dispute that the CTA confers no express right of action, so this appeal turns on

---

[13] *Fenico v. City of Phila.*, 70 F.4th 151, 161 (3d Cir. 2023) (citing *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc)).

[14] *Id.* (quotations omitted) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)).

[15] *See In re State Comm'n of Investigation*, 527 A.2d 851, 853–54 (N.J. 1987).

[16] *Jarrell v. Kaul*, 123 A.3d 1022, 1029 (N.J. 2015) (citing *Cort v. Ash*, 422 U.S. 55, 78 (1975)).

8

whether it implies such a right.[17]  We hold the CTA does not imply a right of action for municipalities to enforce the fee provision.[18]

To determine whether an implied right of action exists, New Jersey courts use the three factors established by the U.S. Supreme Court in *Cort v. Ash*.[19]  Courts must ask

> (1) whether the plaintiff is "one of the class for whose []special benefit the statute was enacted"; (2) whether there is any evidence that the Legislature intended to create a private cause of action under the statute; and (3) whether implication of a private cause of action in this case would be "consistent with the underlying purposes of the legislative scheme."[20]

---

[17] *See* Appellant Br. at 8–10.  The municipalities request that, if we decline to reverse the District Court, we instead certify this question to the New Jersey Supreme Court.  We decline to do so because the question before us is not unclear.  *See United States v. Defreitas*, 29 F.4th 135, 141 (3d Cir. 2022).   New Jersey uses the federal test to decide whether an implied right of action exists; we are familiar with its application.

[18] While our analysis signals that the CTA contains no right of action for municipalities to enforce any of its provisions, the parties contest only the fee provision.

[19] *Jarrell*, 123 A.3d at 1029 (citing *In re State Comm'n of Investigation*, 527 A.2d at 854). *See also Cort*, 422 U.S. at 78.

[20] *Jarrell*, 123 A.3d at 1029–30.

To satisfy this test the courts must decipher "the underlying legislative intent."[21] If "the Legislature has expressly created specific remedies," the New Jersey Supreme Court requires that courts "hesitate to recognize another unmentioned remedy."[22] In other words, "[i]n the absence of strong indicia of a contrary [legislative] intent, we are compelled to conclude that [the Legislature] provided precisely the remedies it considered appropriate."[23]

Here, the second and third *Cort* factors weigh heavily against implying a private right of action for the

---

[21] *Id.* at 1030 (citing *Jalowiecki v. Leuc*, 440 A.2d 21, 26 (N.J. Super. Ct. App. Div. 1981)).

[22] *Id.*

[23] *Id.* (quotations omitted) (alterations in original) (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981)). *See, e.g.*, *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Cons. Ins. Co.*, 773 A.2d 1132, 1148 (N.J. 2001) ("[W]e are not persuaded that the Legislature intended to confer a private right of action on an insurance agent . . . . On the contrary, [the relevant] statutory scheme vests enforcement powers exclusively in the Commissioner."); *Med. Soc'y of New Jersey v. AmeriHealth HMO, Inc.*, 868 A.2d 1162, 1168–69 (N.J. Super. Ct. App. Div. 2005) (finding no implied private right of action for private parties because the relevant statute explicitly vested enforcement authority in the agency commissioner).

municipalities.[24]  Regarding the second factor, there is no evidence that the Legislature intended to create a private right of action for municipalities.  Instead, the Legislature expressly vested "all" enforcement authority in the BPU.[25]  This explicit vesting cuts against the municipalities' argument for at least two reasons.

First, expressly conferring "*all*" enforcement authority makes clear that the Legislature did not intend the municipalities to share enforcement power with the BPU.[26]  The Legislature used the word "all" four times in its enforcement provision:  "The [BPU] . . . shall have full right, power, authority, and jurisdiction to . . . [i]nstitute *all* proceedings and investigations, hear *all* complaints, issue *all*

---

[24] Because the municipalities cannot establish the second and third *Cort* factors, we need not analyze the first factor—whether municipalities are indeed members of a class that the Legislature intended to benefit.  *See* 422 U.S. at 78 (quoting *Texas & Pac. R. Co. v. Rigsby*, 241 U.S. 33, 39 (1916)).

[25] N.J. Stat. Ann. § 48:5A-9(c) (providing that the BPU is vested with the authority to "[i]nstitute *all* proceedings and investigations, hear *all* complaints, issue *all* process and orders, and render *all* decisions necessary to enforce the provisions of [the Act] . . . or of any municipal consents issued" (emphasis added)).  Moreover, the Act explicitly vests regulation authority in the BPU, calling the agency "the local franchising authority in [New Jersey]."  *Id.* § 48:5A-2(d), 48:5A-9.

[26] *See City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("In vesting enforcement of the [act] in state agencies, the [l]egislature seems to have deprived local governments of enforcement powers intentionally.").

11

process and orders, and render *all* decisions necessary to enforce the provisions of [the CTA.]"[27] According to *Merriam-Webster Dictionary*, "all" means "the whole amount, quantity, or extent of."[28] The Legislature provided no exceptions in the CTA for anything that could fall outside the BPU's enforcement authority. Accordingly, we must interpret "all" to mean the entire extent of enforcement proceedings. We find no basis for the municipalities' argument that the Legislature essentially leaves room for the municipalities to enforce the CTA's provisions because "the CTA d[id] not *explicitly delegate* the BPU with the sole and exclusive authority to bring actions."[29] By vesting all enforcement authority in the BPU, the Legislature necessarily delegated to the BPU the sole and exclusive authority to bring actions. If the municipalities shared the authority of the BPU to enforce the CTA's provisions by instituting proceedings, then the BPU would no longer hold "all" enforcement authority. It would hold some, or even most—but not all.[30]

Second, because the Legislature included an express right of action for the BPU, we must hesitate to recognize a remedy not expressly included. We must look to see if there

---

[27] N.J. Stat. Ann. § 48:5A-9(c) (emphasis added).

[28] *All*, MERRIAM-WEBSTER DICTIONARY (2023). *See United States v. Poulson*, 871 F.3d 261, 269 n.7 (3d Cir. 2017) ("When a statutory term is undefined, we give it its ordinary meaning. We may refer to legal and general dictionaries to ascertain the ordinary meaning of a term." (citations omitted)).

[29] Appellant Br. at 17 (emphasis in original).

[30] "All" does not constitute "some" or "most." *All*, MERRIAM-WEBSTER DICTIONARY (2023).

are strong indicia that the Legislature intended to include a private right of action for municipalities.

The municipalities contend that, "taken as a whole, the CTA demonstrates legislative intent that municipalities have power to enforce their rights to collect mandatory fees."[31] Not so. As discussed above, the CTA expressly states that the BPU has the authority to enforce *all* provisions of the CTA, which would of course include the collection of mandatory fees.

Without providing any support, the municipalities also claim that, since the enforcement provision does not explicitly state that the BPU has "*sole and exclusive* [enforcement] authority," we must infer that the "Legislature intended to preserve municipalities' implied rights to collect those fees."[32] As explained above, however, we conclude that the CTA provided the BPU with sole and exclusive enforcement authority. Moreover, the Legislature expressly noted that it vested the BPU with this supervisory authority "to carry out the purposes of [the CTA]."[33] Because one of the purposes of the CTA is to ensure uniformity throughout the municipalities, it would be inconsistent with that purpose to permit individual municipalities to enforce the CTA's provisions. This could create an inconsistent enforcement scheme. We conclude that there are not only no strong indicia of a contrary legislative intent, but there exist only indicia that the Legislature sought to provide the BPU, and no other entities, with enforcement authority. For these reasons, the municipalities fail to show

---

[31] Reply Br. at 20.
[32] Reply Br. at 18–19.
[33] N.J. Stat. Ann. § 48:5A-9(b).

13

that the Legislature intended to create a private right of action under the CTA.

Even if the municipalities could establish the second *Cort* factor, they cannot establish the third: whether it is consistent with the purposes of the CTA to infer the existence of a private right of action for municipalities. As mentioned above, if every municipality had an implied right to sue entities, there would exist an enforcement scheme with nonuniform decisions concerning which providers to sue, when to sue them, and what damages to seek.[34] We agree with Netflix that this would effectively give municipalities "regulatory jurisdiction over who must obtain a franchise and pay franchise fees, and thereby make municipalities local franchising authorities."[35] The municipalities thus cannot establish the third *Cort* factor.

We also reject the municipalities' constitutional argument. They contend that, because the New Jersey Constitution recognizes that municipalities have powers of "necessary or fair implication," we should read an implied right of action into the CTA.[36] True, Paragraph 11 of Article IV, §7 of the New Jersey Constitution describes the power of municipalities to "include not only those granted in express terms but also those of necessary or fair implication, or incident

---

[34] *See City of Ashdown v. Netflix, Inc.*, 52 F.4th 1025, 1028 (8th Cir. 2022) ("The [act]'s clear intent to create uniformity across the state would be undermined if individual municipalities possessed authority to bring enforcement suits independently of the state body charged with enforcement.").

[35] Netflix Br. at 21.

[36] Appellant Br. at 11–14.

14

to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by th[e] Constitution or by law."[37]   That said, the New Jersey Supreme Court has explained that Paragraph 11 does not change the plain meaning of statutes.[38]   Paragraph 11, the court has explained, "was intended to obviate earlier judicial decisions which had taken the position that grants of power by the Legislature to its political subdivisions should be construed narrowly and that doubt as to the existence of any asserted power should lead to its denial."[39]  Given that "municipal action cannot run contrary to statutory . . . law," Paragraph 11 cannot be interpreted to provide municipalities with statutory enforcement authority that would directly conflict with the statute.[40]

Here, the CTA plainly vests all enforcement authority in the BPU.  To find a right of action for the municipalities would mean the BPU would no longer hold all enforcement authority.  Because this would change the plain meaning of the CTA, we find no constitutional basis for finding a private right of action for municipalities.  To find otherwise would conflict with the CTA.  We thus reject the municipalities' constitutional argument.

## V.    Conclusion

---

[37] N.J. Const. art. IV, § 7, ¶ 11.

[38] *Wagner v. Mayor & Mun. Council of City of Newark*, 132 A.2d 794, 800 (N.J. 1957).

[39] *Fraternal Ord. of Police, Newark Lodge No. 12 v. City of Newark*, 236 A.3d 965, 975 (N.J. 2020) (quoting *Union Cty. Bd. of Chosen Freeholders v. Union Cty. Park Comm'n*, 196 A.2d 781, 784 (N.J. 1964)).

[40] *Id.*

Because we find the municipalities have no private right of action, we will affirm the judgment of the District Court.[41]

---

[41] Because we hold the municipalities have no private right of action, we need not reach Hulu's argument on the merits. Hulu Br. at 10–15.