**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2913
_____

KINGFLY SPIRITS, formerly doing business as Port of Pittsburgh Distillery LLC;
MARK WILLSON; EBBREZZA, INC.,
Appellants

v.

BLAKE RAGGHIANTI; DAVID S. KLETT; JUSTINA TUSHAK;
DANIELLE RAGGHIANTI; JORG GERLACH, MD, PhD;
ECHT LLC; GREGG THRELKELD; MARK ZINI; THE AGING ROOM, LLC;
JOHN DOES (1-10); RAGGIANTE, LLC
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 1:22-cv-00050)
District Judge:  Honorable Cathy Bissoon
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 4, 2024
_____

Before:  CHAGARES, Chief Judge, CHUNG and FISHER, Circuit Judges

(Opinion filed: June 26, 2024)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

This case arises out of a business dispute between plaintiff Mark Willson and his former partner, defendant Blake Ragghianti. Willson filed this lawsuit along with plaintiffs Kingfly Spirits, LLC ("Kingfly") and Ebbrezza, Inc. ("Ebbrezza"), alleging a variety of state and federal claims against Ragghianti and defendants Danielle Ragghianti ("Mrs. Ragghianti"), Raggiante, LLC ("Raggiante"), David Klett, Ragghianti's attorney, and Justina Tushak, Kingfly's accountant.[1] The District Court held that the plaintiffs failed to adequately plead any of their federal claims; it then declined to exercise supplemental jurisdiction over the remaining state-law claims and dismissed the case. The plaintiffs appeal, arguing that the District Court erred in holding that their federal claims were inadequately pled. We will affirm.

## I.

We write solely for the parties and so recite only the facts necessary to our disposition.[2] Ragghianti organized Kingfly in February 2015, under a different name and without Willson's involvement, to market and sell alcoholic beverages and to stage events such as musical performances and corporate gatherings. Ragghianti sought investors to fund Kingfly's operations, and Willson invested through his company

---

[1] The plaintiffs initially filed suit against a number of additional defendants, but the claims against them were terminated prior to the entry of judgment by the District Court, and those defendants have not appeared in this appeal. We will refer to the defendants set forth above as the defendants in this opinion.

[2] We draw these facts from the allegations in the operative complaint, and we assume them to be true solely for the purposes of this opinion. Borough of Longport v. Netflix, Inc., 94 F.4th 303, 306-07 (3d Cir. 2024).

Ebbrezza in exchange for a fifty percent ownership stake. Willson invested additional sums in Kingfly over the next few years, after which his ownership of the company reached eighty-five percent. Ragghianti served as Kingfly's head distiller, distillery manager, and bookkeeper during that period, in which capacity he developed and promoted alcoholic beverages. But throughout his employment at the company, Ragghianti took raw materials, finished products, and money that in fact belonged to Kingfly, which he then used for his own private purposes. Furthermore, he pursued business opportunities with third parties on his own behalf rather than on Kingfly's behalf.

In February 2020, Ragghianti told Willson that he would demand an annual salary of $85,000 as a condition of continuing his employment with Kingfly. Kingfly refused the demand and instead accepted Ragghianti's resignation. Ragghianti undermined Kingfly's continuing operations, however, by disabling its online presence, including its website and Facebook page. Kingfly subsequently received the results of an audit documenting the property that Ragghianti took during his employment with the company, which he has retained following his departure and used to produce, market, and sell alcoholic beverages.

Raggiante is a Pennsylvania LLC owned by Ragghianti. Ragghianti used it to purchase, own, and sell raw materials and finished alcoholic beverages. Mrs. Ragghianti, Ragghianti's wife, communicated with him at various points about his business activities, assisted him in mailing packages, and sought to raise funds with him on gofundme.com for their legal defense. Tushak provided bookkeeping services to Kingfly at Ragghianti's

3

direction during his employment there. Following his departure, Tushak invoiced Kingfly for the services she had provided, although discrepancies existed between the hours invoiced and the hours that Kingfly's accounting software recorded her as having worked. Klett is Ragghianti's attorney, and collaborated with him on the development, production, and marketing of alcoholic beverages.

The plaintiffs filed suit on February 11, 2022, then twice amended their complaint.[3] Once amended, the complaint alleged a total of fourteen claims: nine arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, one arising under the Computer Fraud and Abuse Act of 1986 ("CFAA"), 18 U.S.C. § 1030, one under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836, and three under Pennsylvania law.[4] The District Court granted the defendants' motions to dismiss on September 25, 2023, holding that the federal claims were inadequately pled and declining to exercise supplemental jurisdiction over the state-law claims. The plaintiffs timely appealed.

II.[5]

We will separately analyze the three types of federal claims brought in the complaint — the RICO claims, the CFAA claim, and the trade secrets claim — and

---

[3] We will refer to the second amended complaint simply as the complaint.

[4] While the claim for "Aiding and Abetting Computer Fraud and Related Activity," App. 105, might appear also to arise under the CFAA, the plaintiffs in fact bring it under Pennsylvania law, see Plaintiffs' Brief 20 n.9.

[5] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's decision to grant a motion to dismiss. Borough of Longport, 94 F.4th at 306.

4

conclude that each was pled inadequately. The District Court's dismissal of the plaintiffs' state-law claims was predicated on its dismissal of their federal claims, and the plaintiffs do not argue that the District Court independently erred in declining to exercise supplemental jurisdiction over the state-law claims once the federal claims were dismissed. Our conclusion that the dismissal of the plaintiffs' federal claims must be affirmed will thus automatically require that we affirm the dismissal of their state-law claims, as well.

A.

Each of the four subsections of 18 U.S.C. § 1962 defines a distinct violation of federal law, and the complaint alleges each type of violation. Subsections (a), (b), and (c) each define "substantive" RICO violations, which differ in certain respects but also share certain prerequisites, including the existence of a RICO enterprise. Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993) (subsection (a)); id. at 1190 (subsection (b)); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 362 (3d Cir. 2010) (subsection (c)). The plaintiffs claim that the complaint pleaded the existence of an association-in-fact enterprise, a "union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).[6] And the Supreme Court has held "that the RICO statute defines an 'enterprise' broadly." Ins. Brokerage Litig., 618 F.3d at 368. But that breadth is not without limit. "[A] RICO claim must plead facts plausibly implying the existence

---

[6] As the plaintiffs argue before this Court only that an association-in-fact enterprise existed, see Plaintiffs' Brief 7, we do not consider whether the complaint might adequately plead a RICO claim predicated on the existence of an enterprise of some other type.

5

of an enterprise with the structural attributes identified in *Boyle*: a shared 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" Id. at 369-70 (quoting Boyle v. United States, 556 U.S. 938, 946 (2009)). The District Court held that the allegations in the complaint failed to justify the plausible inference that such an enterprise existed. We agree.

Although the plaintiffs insist at length that the District Court evaluated the complaint using too stringent a standard, their briefing does not attempt the threshold task of identifying the structural attributes possessed by the enterprise asserted in this case. See Boyle, 556 U.S. at 946. The plaintiffs do not name the alleged common purpose that animated the association's members, explain how the alleged relationships among them allowed them to advance that purpose, or specify the period of time, sufficient to achieve that purpose, during which the association allegedly existed. Instead, their brief sets forth only a pattern of racketeering activity: it identifies "who the actors were, what predicate acts each actor was responsible for, the times Appellants believed those predicates acts occurred, how they each acted in moving the Scheme forward, and how they were all interrelated." Plaintiffs' Brief 15. To be sure, in a particular case "a pattern of racketeering activity may be sufficient . . . to infer the existence of an association-in-fact enterprise." Boyle, 556 U.S. at 951. But "one does not necessarily establish the other." Id. at 947 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). Though the complaint may allege that Ragghianti engaged in a series of unlawful acts, aided at certain points by other of the defendants, absent the structural attributes identified in

6

Boyle, those allegations establish neither "an ongoing organization, formal or informal," nor that "the various associates function[ed] as a continuing unit." Id. at 945 (quoting Turkette, 452 U.S. at 583). And because those allegations do not plausibly support the inference that there existed "a continuing unit that function[ed] with a common purpose," id. at 948, they fail to state a claim for a substantive RICO violation.

Because "a conspiracy may exist and be punished whether or not the substantive crime ensues," Salinas v. United States, 522 U.S. 52, 65 (1997), a complaint need not plead that a substantive RICO violation occurred to state a claim for RICO conspiracy in violation of 18 U.S.C. § 1962(d). But a section 1962(d) violation requires "a conspiracy *to violate RICO*." Zavala v. Wal-Mart Stores Inc., 691 F.3d 527, 539 (3d Cir. 2012). Thus, though a RICO conspiracy may occur even without a consummated substantive RICO violation, a complaint still must "allege adequately an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense." Ins. Brokerage Litig., 618 F.3d at 383 (quotation marks and brackets omitted). In the absence of any alleged RICO enterprise, as we have explained, the actions alleged in the complaint did not amount to a substantive RICO violation. And the complaint does not allege that the defendants conspired to engage in any additional conduct that would have constituted a substantive RICO violation, had it been consummated. Because the complaint did not "allege adequately an endeavor which, if completed, would satisfy all of the elements of a substantive RICO offense," id., it fails to state a claim for a RICO conspiracy.

7

B.

The CFAA generally prohibits unauthorized computer access. 18 U.S.C. § 1030(a). It further permits "[a]ny person who suffers damage or loss by reason of a violation of this section [to] maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." Id. § 1030(g). But such an action "may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)." Id. Each of those factors, in turn, involves a particular type of harm caused by the defendant's unlawful conduct: a loss of at least $5,000, id. § 1030(c)(4)(A)(i)(I), an effect on the provision of medical services, id. § 1030(c)(4)(A)(i)(II), a physical injury, id. § 1030(c)(4)(A)(i)(III), a threat to public health or safety, id. § 1030(c)(4)(A)(i)(IV), or damage to a federal government computer used in the administration of justice, national defense, or national security, id. § 1030(c)(4)(A)(i)(V).

The District Court concluded that the complaint failed to state a claim for a violation of the CFAA because it did not plausibly allege that the defendants' unauthorized computer access caused any of those types of harm. We agree. Plainly, the allegations in the complaint are wholly unrelated to medical care, physical injury, public health and safety, or computers owned by the federal government. And while the complaint certainly alleges a loss of greater than $5,000, the only damages it identifies consist of the value of property that Ragghianti allegedly stole from Kingfly and the profits lost when that property could no longer be sold by Kingfly. App. 93-94. But the CFAA requires that each enumerated harm be caused by the conduct that violated the

8

CFAA. 18 U.S.C. § 1030(4)(A)(i) (providing that each factor applies "if the offense caused" the relevant harm). And while it is conceivable that some unauthorized computer access alleged in the complaint may have causally contributed to the taking of Kingfly's property, the plaintiffs have identified no factual allegations capable of nudging that proposition "across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Having failed to plausibly allege that the defendants' alleged conduct caused any harm set forth in subclauses (I) through (V) of 18 U.S.C. § 1030(c)(4)(A)(i), the complaint thus fails to state a claim under the CFAA.

C.

"An owner of a trade secret that is misappropriated may bring a civil action under [the DTSA]." 18 U.S.C. § 1836(b)(1). To state a claim for trade secret misappropriation, a complaint must allege, among other elements, the existence of a trade secret. Oakwood Lab'ys LLC v. Thanoo, 999 F.3d 892, 905 (3d Cir. 2021). And "to plead the existence of a trade secret in a misappropriation claim brought under the DTSA," a complaint must "allege facts supporting the assertion that the information [claimed as a trade secret] is indeed protectable as such." Id. To be protectable as a trade secret, in turn, information must "derive[] independent economic value . . . from not being generally known." 18 U.S.C. § 1839(3)(B). The District Court held that the "[p]laintiffs' passing references to trade secrets" were insufficient to meet this standard. App. 7 n.8. We agree. The complaint specifically identifies only two types of information alleged to constitute trade secrets — the recipes and labels for a brand of rum developed by Ragghianti. Id. at 50, 106. But it does not allege that either the recipes or the labels derived independent

9

economic value from not being generally known, nor does it allege any facts from which that claim might plausibly be inferred.  And absent allegations supporting the claim that the recipes or labels were protectable as trade secrets, the complaint fails to plead the existence of a trade secret and thus fails to state a claim for misappropriation under the DTSA.

III.

For the foregoing reasons, we will affirm the Judgment Order of the District Court.